In re ROME PLANING MILL.

(District Court, N. D. New York. October 4, 1899.)

No. 190.

**1. BANKRUPTCY—ACTS OF BANKRUPTCY—GIVING PREFERENCE.**
Creditors filing a petition in involuntary bankruptcy against their debtor, alleging, as an act of bankruptcy, that he has transferred property with intent to give a preference, must assume the burden of proving the transfer of property, the debtor's intent to prefer a creditor, and his insolvency at the date of the transfer, except (as to the last requirement) when the respondent fails to produce his books and papers and submit to an examination, thereby incurring the obligation of proving his own solvency.

**2. SAME—INTENT OF PARTIES.**
Where a transfer of property by an insolvent debtor with intent to prefer a creditor is made the basis of a petition in involuntary bankruptcy against him, the intent of the debtor is alone material. It is not necessary to show the intent with which the creditor received the transfer of property, nor that he had reasonable cause to believe a preference was intended.

**3. SAME—PRESUMPTION OF INTENT.**
Where a petition in involuntary bankruptcy charges the debtor with having transferred property with intent to give a preference, his intent to prefer may be presumed from the fact of his having made a transfer of a large part of his property, while insolvent, to a single creditor; and when this is shown the burden is on the debtor to show that he was ignorant of his insolvency, and had reason to believe he could pay his debts in full.

4. SAME—SUFFERING OR PERMITTING PREFERENCE.

Upon a petition in involuntary bankruptcy under Bankr. Act 1898, § 3, subd. 3, the petitioning creditors must assume the burden of proving that a preference was obtained by a creditor through legal proceedings; that the debtor suffered or permitted the preference, and did not vacate or discharge it at least five days before a sale or final disposition of the property affected; and that he was insolvent at the time the preference was obtained. Proof that he was insolvent at the time of filing the petition is insufficient.

5. SAME—CO-OPERATION OF DEBTOR.

In order to commit an act of bankruptcy by suffering or permitting a creditor to obtain a preference through legal proceedings against him, it is not necessary that the debtor should do any affirmative act. It is enough if he remains passive and supine, and allows his property to be taken by one creditor at the expense of the others.

6. SAME—"LEGAL PROCEEDINGS."

In Bankr. Act 1898, § 3, subd. 3, providing that it shall be an act of bankruptcy if an insolvent debtor shall suffer or permit a creditor to obtain a preference through "legal proceedings," the words quoted mean any proceeding in a court of justice, interlocutory or final, by which the property of the debtor is seized and diverted from his general creditors.

7. SAME—TIME OF FILING PETITION.

Under the provision of the bankruptcy act that it shall be an act of bankruptcy if a debtor, who has suffered a creditor to gain a preference through legal proceedings, does not vacate the preference "at least five days before a sale or final disposition of the property affected," creditors who seek to have him adjudged bankrupt on this ground need not wait until a sale has taken place. If the debtor, five days before the advertised day of sale, has not discharged the preference, creditors may then file a petition against him, and, on a proper showing, have the sale enjoined.

In Bankruptcy.

Risley & Love, for creditors.

Isaac J. Evans, for bankrupt.

COXE, District Judge.    This is a proceeding in involuntary bankruptcy, the petition having been filed November 1, 1898.    An amended petition was filed December 2, 1898, and, the alleged bankrupt having answered, the issues were referred to the referee to ascertain and report the facts.    The matter now comes before the court upon the petitioners' motion to confirm the referee's report and upon exceptions filed by the alleged bankrupt.

Two acts of bankruptcy are alleged in the petition:    First. That the alleged bankrupt permitted certain creditors to obtain judgments against it on the 17th day of October, 1898, levy upon its property and sell the same at public auction.    Second. That the alleged bankrupt held title to its real estate under a land contract from the Oneida County Savings Bank and on the 31st day of October, 1898, it "suffered the contract to be forfeited to the Oneida County Savings Bank when the company was insolvent with a view  *  *  *  of cheating, hindering, delaying and defrauding creditors of the said Rome Planing Mill and to give and secure to them a preference as against all the creditors of the Rome Planing Mill, contrary to an act," etc.

Whether the petition alleges an act of bankruptcy under section 3, subd. 2, may, perhaps, be doubted, but the point is not mooted in the brief submitted for the alleged bankrupt.

There has, I think, been some misapprehension regarding the law

applicable to this controversy. The two clauses of section 3, par. a, involved, are subdivisions 2 and 3. Subdivision 2 provides that an act of bankruptcy by a person shall consist of his having—

"Transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors."

In order to succeed under this subdivision the petitioners must prove: First. A transfer of the debtor's property to a creditor. Second. The debtor's intent to prefer such creditor. Third. The insolvency of the debtor at the date of the transfer. The burden of proof is upon the petitioners except in the contingency provided for in paragraph d of section 3, where a presumption of insolvency is raised against a debtor who refuses to produce his books and papers and submit to an examination. In the present case the debtor has complied with the requirements of the law in this regard and no presumption of insolvency exists.

The meaning of the word "transferred" is defined in section 1, subd. 25, of the act as follows:

" 'Transfer' shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security."

The intent which it is necessary to establish is that of the debtor. It is not important that the intent of the creditor to whom the preference is given should be shown; whether or not he had reasonable cause to believe that a preference was intended is immaterial. The debtor's intent to give a preference may be presumed from a transfer, while insolvent, of a large portion of his property to a single creditor. When this is proved the burden is upon him to show that he was ignorant of his insolvency and had reason to believe that he could pay his debts in full. Toof v. Martin, 13 Wall. 40. The debtor's insolvency must be shown at the date of the transfer. The provisions of paragraph c (section 3) relate only to subdivision 1 of paragraph a. It is not a defense, therefore, to a petition alleging acts of bankruptcy under subdivisions 2, 3, 4, and 5, to prove solvency at the date of filing the petition. George M. West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836.

"Insolvency" is defined in section 1, subd. 15, as follows:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

Section 3, subd. 3, provides that an act of bankruptcy by a person shall consist of his having—

"Suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

In order to succeed under this subdivision the petitioners must prove: First. That a preference was obtained by a creditor through legal proceedings. Second. That the debtor suffered or permitted the preference and did not vacate or discharge the preference at

least five days before a sale or final disposition of the property affected. Third. That the debtor was insolvent at the time the preference was obtained. The burden of proof is upon the petitioners precisely as under the preceding subdivision. The debtor's intent is not made an ingredient. It is enough that the creditor has obtained a preference and that the debtor has permitted it to remain undischarged. What was the debtor's intent regarding the matter is wholly immaterial. It is not necessary that he should do any affirmative act. If he remains passive and supine and permits his property to be taken by one creditor at the expense of the others he has "suffered or permitted" a preference to be obtained; this is enough. The present act differs from the act of 1867 where the language used (section 39) is "procure or suffer." The same words "procured or suffered" are found in section 60, par. a, of the present act, relating to preferred creditors, and it may be that a preference obtained through legal proceedings described in subdivision 3 of section 3 cannot be voided by the trustee pursuant to section 60; but that permitting such a preference constitutes an act of bankruptcy, there can be little doubt. In re Reichman, 91 Fed. 624. The words "legal proceedings" used in subdivision 3 of section 3 have reference to any proceedings in a court of justice, interlocutory or final, by which the property of the debtor is seized and diverted from his general creditors. The observations regarding proof of insolvency under subdivision 2 are equally applicable to subdivision 3. It is not necessary that the creditor should wait until a sale has actually taken place. It would be a strange construction of an act designed to save and protect the debtor's estate, to hold that it can only be set in operation after the estate has been plundered and dissipated. The debtor has until five days before the day the sale is legally noticed in which to vacate or discharge the preference. If he has not done so at that time the creditor may proceed and file a petition and, upon a proper showing, may enjoin the sale. The act of bankruptcy is not consummated until the expiration of the time in which the debtor may vacate or discharge the lien and the last day for doing this is five days before the day a sale of the property is advertised. In the case of a judgment, therefore, the petitioners must prove the entry of the judgment, the issue of an execution, the levy thereunder and the debtor's insolvency at the time of the judgment and levy. They must also prove that the property was actually sold at execution sale or that the sale was advertised for a day certain and that the debtor had permitted the levy to stand until the sale was but five days distant.

The referee finds that the Rome Planing-Mill Company was insolvent November 1, 1898, when the petition was filed. He also finds that the company's real estate "had been taken by said Oneida County Savings Bank, under its contract, and surrendered by the alleged bankrupt, and not available as assets of the corporation for the payment of its debts." As a conclusion of law he finds that the company while insolvent permitted certain of its creditors to obtain a preference through legal proceedings. I am constrained to hold that the facts found by the referee are insufficient to support an

adjudication. Regarding the disposition of the company's real estate no one of the ingredients necessary to constitute an act of bankruptcy is found by the referee. He fails to find that there was a transfer of the real estate by the company to the bank, that th · company was insolvent at the date the bank took possession or that the transaction was preferential. The referee's conclusion that the company should be adjudged a bankrupt is based wholly upon its action in permitting its property to be taken on judgment and execution. Indeed, it would appear from the petitioners' brief that their principal reliance is based upon the facts relating to the judgments and sale. As before stated it is necessary for the petitioners to prove the judgments, the levy, the sale and the insolvency on October 17th, the date of the judgments. The referee finds all of these facts except the insolvency. The finding that the company was insolvent November 1st does not meet the requirements of the statute. The company might have been solvent on October 17th and hopelessly insolvent two weeks later. Having in mind that the crucial question under subdivision 3 is the debtor's insolvency at the moment the preference is obtained, it is clear that an adjudication cannot be made where this element is lacking. It is thought that the matter should be referred back to the referee as a special master, under rule 30 of this district, for a finding upon the question whether or not the Rome Planing Mill was insolvent on the 17th of October, 1898. Adjudication depends upon an affirmative answer to this question.

Should the petitioners desire to rely upon the alleged act of bankruptcy under subdivision 2 it will, of course, be necessary for them to prove and for the referee to find: First. That there was a transfer of the real estate to a creditor. Second. Insolvency at the time of the transfer. Third. Intent to prefer such creditor over the debtor's other creditors.

It is not at all surprising that there should have been some misunderstanding as to the law. This was one of the first involuntary petitions filed in this district. At that time there was a wide diversity of opinion as to the true construction of paragraphs a and c of section 3. It was not until the spring of the present year that the discussion was set at rest by the decision of the supreme court in the Lea Case, supra. Reference ordered.