### In re RIALTO PROPERTIES CO.
#### No. 25123–L.

District Court, N. D. California, S. D.
Sept. 11, 1934.

58

Theodore L. Breslauer, of San Francisco, Cal., for debtor.

Milo R. Robbins, Arthur W. Brouillet, William P. Hubbard, all of San Francisco, Cal., for petitioners.

McKinstry & Haber-Peirce Coombes, of San Francisco, Cal., for Anglo California Nat. Bank of San Francisco.

ST. SURE, District Judge.

This is a proceeding begun under section 77B of the Bankruptcy Act of July 1, 1898, as added June 7, 1934 (11 USCA § 207), the amendment being commonly referred to as Corporation Reorganization Act. The peti-tion was filed on August 10, 1934, by three creditors of the debtor corporation, Rialto Properties Company. The purpose of the proceeding is denominated: "Proceedings for the Reorganization of a corporation under section 77B of the Bankruptcy Act" (see title of petition).

Section 77B (a) of the act (11 USCA § 207 (a) provides that three or more creditors who have provable claims against a corporation which amount in the aggregate, in excess of the value of securities held by them, if any, to $1,000 or over, may file a petition under this section, stating that such corporation is insolvent or unable to meet its debts as they mature and that it has committed an act of bankruptcy within four months, and may allege that petitioning creditors propose that it shall effect a reorganization.

The debtor is a real estate corporation with a bonded debt of $740,000. The petitioners are a creditors' committee, representing the holders of $225,500 worth of the bonds. The bonds are in default, and the taxes on the property by which they are secured are delinquent. The property has been sold once for delinquent taxes. The trustee under the deed of trust threatens to foreclose the deed of trust upon demand already made by the holders of about 25 per cent. of the outstanding bonds. These bonds were acquired by their holders for less than their value. The highest bid that the trustee has been able to obtain is $100,000, for which it has refused to sell. This, it is claimed, is far less than the value of the property. But the fact that the bonds which are pressing for foreclosure were acquired for less than their value, and the fact that the property cannot be sold for more than $100,000, are beside the point in this proceeding. The only question before the court is one of jurisdiction.

One of the necessary jurisdictional allegations in a proceeding of this character is that the corporation against whom the proceeding is aimed has committed an act of bankruptcy within four months (see section 77B (a). The original petition was not considered sufficiently definite in regard to the act or acts of bankruptcy, and an amendment thereto was filed on August 23, 1934, in which the acts of bankruptcy were alleged in extenso.

In the amendment the first two acts of bankruptcy charged are that the debtor, at a date which the creditors do not know and cannot learn because it is concealed by the trustee, transferred, paid, concealed, and re-

moved to the Anglo California National Bank of San Francisco (the trustee under the deed of trust by which the bonds were secured) the sum of $10,000 more or less, with intent to hinder, delay, and defraud creditors, and that it did so hinder, delay, and defraud the creditors thereby. The date of the transfer is alleged to have been about August 1, 1934, but the evidence shows that the transfer of the funds, which it is charged were so turned over to the bank, took place in 1932; the first payment having been made on February 8th and the last on June 27th of that year. The petitioners claim that the collection of this money constituted an act of bankruptcy under section 3 (a) (1) and (2) of the Bankruptcy Act, 11 USCA § 21 (a) (1, 2). Under section 3 (a) (1), a transfer, in order to constitute an act of bankruptcy, must be made with intent to hinder, delay, and defraud the other creditors of the debtor. The intent with which a transfer is made is a vital factor necessary to be established in order to show an act of bankruptcy. "An actual intent to hinder, delay and defraud creditors must be proved." 1 Remington on Bankruptcy (3d Ed.) § 114. This has not been done either by direct or circumstantial evidence. The $10,000 was collected and used for the purpose of paying taxes on the property by which the bonds were secured and for bearing the expenses of the trust, except $72.14 balance still remaining in the hands of the trustee. The manner in which the funds were used negatives any inference that they were collected or used for the purpose of hindering, delaying, or defrauding anybody.

The second specification in the amended petition is based upon the same facts, namely, the collection and use of the $10,000 hereinbefore referred to. Under section 3 (a) (2), a transfer of money or property by a debtor, while insolvent, must be made with intent to prefer the creditor to whom the transfer is made over other creditors, or it does not constitute an act of bankruptcy. As has been stated above, the manner in which this money was used negatives any inference that the collection was made or the money used for the purpose of preferring any creditor. It was used for the protection of the very property which is the security for the bonds held by the petitioners. The only intent that appears here was the intent on the part of the trustee to preserve and protect the trust property.

■ The third act of bankruptcy charged in the amended petition is that the debtor permitted the sale of its property to the state for taxes and permitted tax liens to attach to it, and that this constituted an act of bankruptcy under section 3 (a) (3) and (4) of the act, 11 USCA § 21 (a) (3, 4). Section 3 (a) (3) provides that permitting a creditor of an insolvent to obtain a preference through legal proceedings and not having, at least five days before a sale or other disposition of the property affected by such preference, vacated or discharged the same, constitutes an act of bankruptcy. The property subject to the trust deed was sold for taxes on the 29th day of August, 1933. This was more than four months before this proceeding was instituted, and consequently cannot be made the basis for the court's taking jurisdiction of the proceeding, for the act of bankruptcy, to form the basis for jurisdiction, must have been committed within four months previous to the filing of the petition, under section 77B (a). This proceeding was begun on August 10, 1934, more than a year after the sale for taxes. The claim that the levy of additional taxes after August 29, 1933, and within the four months' period, constituted a preference and was permitted by the debtor with the intent of creating a preference on the part of the taxing authority is without merit. The assessment for purposes of taxation, the levying of the assessment, and the attachment of the lien of the assessment to the property do not constitute legal proceedings within the meaning of section 3 (a) (3) of the statute. The entire context of the section shows that Congress did not mean to include taxation as a legal proceeding. "The words 'legal proceedings' used in subdivision 3 of section 3 have reference to any proceedings in a court of justice, interlocutory or final, by which the property of the debtor is seized and diverted from his general creditors." In re Rome Planing-Mill (D. C.) 96 F. 812, 815, 3 A. B. R. 123. No case has been found construing anything to be meant by legal proceedings other than some proceeding in a court of law or equity.

■ The fourth specification of an act of bankruptcy is that the debtor has admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt. If this were true, it would constitute an act of bankruptcy under section 3 (a) (6) of the Bankruptcy Act, 11 USCA § 21 (a) (6). The "admission" and "willingness" is alleged to be contained in the pleadings in a case prosecuted in the superior court of the state of California in which the debtor was defendant. The claim is stated in the petition here-

60

in thus: " 'That the defendant * * * did become insolvent on or about November 1, 1931, ever since has been, and now is insolvent, and unable to meet its obligations.' (Allegation 15 of the complaint.) And, thereafter, and on May 17th, 1934, the said debtor caused to be served and filed in said action, its verified answer in which it did not deny said allegation and by reason thereof, under the laws of the State of California, the debtor did admit the said allegation." This falls far short of meeting the provisions of section 3 (a) (6). Failure to deny the allegations of a complaint in the state court does not fill the requirements of an admission in writing of its willingness to be declared a bankrupt, by the corporation. The provision of the statute (section 3) reads thus: "(a) Acts of bankruptcy by a person shall consist of his having * * * (6) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground." The cases cited in which it was held that admissions in pleadings were sufficient to establish acts of bankruptcy were all cases of admissions in proceedings in the bankruptcy court. The mere failure to deny such an allegation in a proceeding in the state court will not show willingness to be adjudged a bankrupt where every act of the debtor, both in this proceeding and in the proceeding in the state court, shows an unwillingness to be so adjudged. Especially is that true here. From the beginning the debtor has strenuously opposed an adjudication in bankruptcy.

The petition will be denied and the proceedings dismissed.