**UNITED STATES of America,
Plaintiff in Intervention-
Appellee,**

v.

**CREST FINANCE CO., Inc., Defendant-
Appellant.**

**No. 13226.**

United States Court of Appeals
Seventh Circuit.

May 16, 1961.

Rehearing Denied June 15, 1961.

Hamilton Clorfene, Harry G. Fins, Chicago, Ill., for appellant.

Lee A. Jackson, Chief, Appellate Section, Kenneth E. Levin, Atty., U. S. Department of Justice, Washington, D. C., James P. O'Brien, U. S. Atty., Irwin J. Askow, Albert E. Jenner, Jr., Chicago, Ill., Louis F. Oberdorfer, Asst. Atty. Gen., A. F. Prescott, George F. Lynch, Attys., Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Harvey M. Silets, Asst. U. S. Atty., Chicago, Ill., for the United States.

David Levinson, John J. Faissler, C. Harker Rhodes, Jr., Chicago, Ill., for Peter Kiewit Sons' Co., one defendant-appellee.

Richard James Stevens, Chicago, Ill., for Road Machinery & Supplies Co. of Minneapolis, Inc., one defendant-appellee.

A. Bruce Schimberg, Chicago, Ill., Eli S. Silberfeld, New York City, Maurice Jacobs, Chicago, Ill., Schimberg, Jacobs & Schimberg, Chicago, Ill., Kupfer, Silberfeld, Nathan & Danziger, New York City, of counsel, for National Commer-

cial Finance Conference, Inc., amicus curiæ.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

On January 5, 1959, Standard-Crowley-Jackson (Standard) filed this action for interpleader against Crest Finance Co., Inc. (Crest), the United States and others. Thereafter, Standard paid $17,369.94 into the registry of the United States District Court for the Northern District of Illinois, subject to the decision of the Court as to which defendant or defendants shall recover. An order was thereafter entered dismissing the United States as party defendant, and granting the United States (Government) leave to file a complaint in intervention. On April 20, 1959, plaintiff filed an amended complaint making Road Machinery and Supplies Company (Road Machinery) and Peter Kiewit Sons' Company (Peter Kiewit) additional parties defendant.

Standard was the principal contractor for the construction of a portion of the Illinois Toll Road. On September 20, 1957, Standard and Twin Excavating Co., Inc., entered into a contract pursuant to which the latter furnished certain labor and materials for the road construction.

From March 21, 1958 through June 10, 1958, Crest made loans to Twin Excavating Co., Inc. which were secured by promissory notes and by assignments of accounts receivable of Twin Excavating Co., Inc. Each note provided that the accounts were pledged as security. The loans during this period totaled $67,722.53.

The District Director of Internal Revenue assessed federal withholding and social security taxes against Twin Excavating Co., Inc. with respect to wages paid to employees for services rendered between April 1, 1958 and September 30, 1958. The dates of the assessments were August 15, November 7 and November 14, 1958. Notices of the federal tax liens

for said assessments were duly filed. On October 9, 1958, a notice of levy was served upon Standard by the United States. It was admitted by Standard that it owed Twin Excavating Co., Inc. the sum of $17,369.94, and it was this amount that Standard paid into court.

The Government admits that the claims of Road Machinery and Peter Kiewit have priority over its claims, but insists that it is entitled to the balance of the fund. Crest contends its liens which came into existence during the period March 1, 1958 through June 10, 1958, are prior and superior to all other claimed lien rights. Road Machinery and Peter Kiewit urge they are subcontractors who have perfected their liens under Illinois law and as such, have liens superior to the assignee of the contractor and superior also to the tax liens of the United States.

The Revenue Act of 1928, § 613(b), 45 Stat. 875, provided that a government tax lien shall not be valid against any "mortgagee, purchaser, or judgment creditor until notice thereof has been filed * * *." This was amended in 1939 to include "pledgee." Revenue Act of 1939, § 3672(a), 53 Stat. 882, 26 U.S.C. § 3672(a). Section 6323(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6323(a) now in effect, has taken the place of section 3672(a) of the 1939 Code, and provides, "Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate * * *."

Under Illinois statutes, no filing or recording is required to perfect an assignment of accounts receivable. Ill.Rev. Stat.1959, ch. 121½, § 221. Crest argues its liens were choate prior to the filing of the federal liens in that it was clearly established that Crest was the lienor, that specific accounts receivable were subject to the lien, and that the amount of the lien was fixed. Crest cites United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

The Government argues that what is a choate lien for this purpose is a question of federal law so that the characterization of a lien as choate under state law is not controlling; that the relative priority of a federal lien for unpaid taxes is also a federal question. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264.

The Government's main contention is that the assignments to Crest cannot be pledges within the meaning of section 6323(a) because Crest did not have possession of the assigned accounts. The Government argues, in order to have an effective pledge under the common law and section 6323(a), the contract to pledge must be accompanied by a transfer of possession or control over the property or collateral pledged as security.

The Government concedes that a chose in action can be the subject of an effective pledge, but argues that although the property is incapable of actual delivery to the pledgee, this does not dispense with the requirement of transfer of possession. In such a case, it argues, the pledgee must have possession and control over the documents which represent the property.

Crest argues that it had done everything necessary to perfect the assignment under the Illinois statutes. In addition, the contract between the parties clearly indicates that a pledgor-pledgee relationship was intended. The contract included a "Schedule of Assigned Accounts" which listed the specific accounts that were to be collateral for the loans. Standard knew that the accounts were assigned. It made payments directly to Crest. The only thing that was not done, and which the Government contends made all the other actions futile, was the transfer of the pieces of paper that represented the accounts.

■ It is well established that under the common law, a transfer of possession is an essential part of a valid pledge. 72 C.J.S. Pledges §§ 19, 20. The Illinois Supreme Court has held that certain agreements which purported to sell and assign accounts receivable outright were, in fact, security transactions and the transfers were pledges. Dorothy v. Commonwealth Commercial Company, 278 Ill. 629, 116 N.E. 143, L.R.A.1917E, 1110; Mercantile Trust Company of Illinois v. Kastor, 273 Ill. 332, 112 N.E. 988. However, under Illinois law, an assignment of accounts may be different than a pledge. Immel v. Travelers Insurance Company, 373 Ill. 256, 26 N.E. 2d 114. The fact that the Illinois statute, Ill.Rev.Stat.1959, ch. 121½, § 220(c) provides that an assignment includes a pledge, does not mean that every assignment is also a pledge.

■ It is not necessary for us to decide whether the assignments here under examination were pledges under section 6323(a). However, we are required under United States Supreme Court decisions to hold that Crest's liens were not perfected, or, in the language of the Court, "choate."

In United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 370, 98 L.Ed. 520, the Court stated: "On the other hand, the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States." Yet, in more recent cases, mostly in *per curiam* opinions, the Supreme Court seems to have imposed a standard of choateness that few competing non-federal liens can achieve, short of judgment.

The New Britain case involved municipal liens for real property taxes and water rents. The Court ruled section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321, under which the federal lien was created, "does not in terms confer priority," and that the controlling principle is "first in time is the first in right." The Court said the priority of competing liens depends on when they "attached to the property in question and became choate."

The Supreme Court decision which controls this case is United States v. R. F. Ball Construction Co., 355 U.S. 587,

78 S.Ct. 442, 443, 2 L.Ed.2d 510. It is to be regretted that in deciding a question that would, necessarily, often be considered by the bench and bar, the reasons given by the majority for its decision were confined to less than three lines. The language used was: "The instrument involved being inchoate and unperfected, the provisions of § 3672(a), Revenue Act of 1939, 53 Stat. 449, as amended, 53 Stat. 882, 56 Stat. 957, 26 U.S.C.A. § 3672(a), do not apply." Fortunately, the four Justices who dissented give us some insight as to the basis of the majority opinion.

In the Ball case, a bonding company claimed priority under an assignment given as security for payment of a contingent indebtedness which did not arise until after the filing of the notice of the federal tax lien. The bonding company contended its lien was within the privileged categories of mortgagee or pledgee under section 3672(a) (now § 6323(a)). The District Court agreed with the bonding company that its assignment as collateral security was a perfected contractual lien and, therefore, entitled to priority over the federal tax lien. The Court of Appeals affirmed, but the Supreme Court reversed in the five to four decision hereinbefore described.

It is true that the New Britain case involved a statutory lien, but that fact is no ground for distinction, as in the Ball case the Court has imposed the same rigid standards in a case involving contractual liens.

In United States v. Chapman, 10 Cir., 281 F.2d 862, the taxpayer contracted to do construction work in Oklahoma. To secure payment of loans, the taxpayer assigned his contract to a finance company. Subsequent to the assignment, the Government perfected tax liens against the property of the taxpayer. In an interpleader action to determine the distribution of a sum owing under the construction contract, the Court relied on the Ball case, and held that the finance company's lien was inchoate and unperfected. The finance company attempted to distinguish the Ball case on the ground that Ball involved an assignment to secure a future or contingent indebtedness, whereas the assignment here was to secure a present and existing debt. The Court cited with approval First State Bank of Medford v. United States, D.C. Minn., 166 F.Supp. 204, and held that this distinction does not perfect an unperfected lien.

The amicus curiæ attempted to distinguish the Chapman case on the ground that under Oklahoma law the assignment of the contract had to be recorded to be effective against third parties. However, there is nothing in the Court's opinion to indicate that its decision was based on the Oklahoma statute.

In the First State Bank of Medford case, supra, the bank loaned money to the taxpayer on the strength of a purported oral assignment by the taxpayer to the bank of money due from a contractor. The contractor was notified and had no objections to the assignment and thereafter made payments to the bank. Subsequently, in 1954, the Government perfected tax liens against the property of the taxpayer. The bank did not realize until 1955 that the taxpayer was in financial difficulty, and then reduced its notes to judgment. The Court said the issue was whether the bank came within any of the classes set out in section 6323(a). The Court, relying primarily on the Ball case, held the bank's lien was inchoate and unperfected.

Again, the amicus curiæ attempted to distinguish this case on the ground that the Minnesota statute required a "written" assignment. However, the Court said that the assignment was not invalid under the statute (166 F.Supp. at page 207) and based its decision on federal law (at pages 209–210).

In Arthur Company v. Chicago Paints, Inc., D.C.Minn., 175 F.Supp. 50, the taxpayer had a contract to paint certain structures. At the time of the suit, $9,000 was due the taxpayer under the contract. The bank had been financing the taxpayer and taking assignments of accounts receivable as security for an open line of credit. The debtor was noti-

fied the account had been assigned. The federal lien was perfected after the account in question, representing the $9,-000, was assigned to the bank. The Court, again relying on the Ball case, held that the bank's lien failed to meet the test for preference over a federal tax lien.

In view of the decision in United States v. R. F. Ball Construction Co., supra, and the three additional cases decided after the Ball decision, we hold Crest's lien was not superior or prior to the lien of the United States. We must and do hold that Crest's lien was not choate and perfected as those terms have been defined by the Supreme Court.

We accept the concession of the Government that Road Machinery and Peter Kiewit, who are holders of mechanics' liens, are prior and superior to the liens of the United States.

The judgment of the District Court is Affirmed.