William C. Hecht, Jr., J.
In the Lincoln Square Condemnation Proceeding, an award for trade fixtures was made to Burke Oldsmobile, Inc. This award, with interest thereon to May 1,1961, amounted to $100,719.34. The instant motions and cross motions involve conflicting claims to the foregoing award.
All parties concede that the attorneys who represented Burke in the condemnation proceeding should be paid their fee (Matter of City of New York [United States — Coblentz], 5 N Y 2d 300). The parties have agreed to a fee of $22,500 and payment in that amount has been authorized.
A claim of $6,225 is made by the beneficiaries of one Gottlieb. On February 6,1960 Burke made an assignment of this amount out of the award to Gottlieb. The final decree making the award *146 to Burke was filed on February 19. On March 4, Gottlieb recorded this assignment in the office of the City Comptroller pursuant to section B15-31.0 of the New York City Administrative Code.
At the time of such recordation, the amount of the award and the party to whom it Was payable had all been finally determined by the final decree entered two weeks before. Therefore the assignment was not one of an inchoate interest, but rather a transfer of an existing interest in a completed award. The United States Government’s lien against Burke was filed with the County Clerk, and a notice of levy filed with the Comptroller on March 14, 1961, pursuant to subdivision (a) of section 6323 of the Internal Revenue Code of 1954. Since this filing occurred more than a year after recordation of the Gottlieb assignment, the latter has priority.
The city never questioned the priority of the Gottlieb claim over its own. The Federal Government originally claimed priority over Gottlieb, on the authority of United States v. Ball Constr. Co. (355 U. S. 587).
However, on December 18, 1961, after submission of these motions, the United States Supreme Court vacated a judgment of the United States Court of Appeals for the Seventh Circuit in the case of Crest Finance Co. v. United States (291 F. 2d 1), which case had been decided on the authority of United States v. Ball Constr. Co. (supra). With commendable diligence, the Assistant United States Attorney promptly advised the court of that decision, and withdrew his objection to the Gottlieb claim. Accordingly, it will be allowed.
After deducting the attorneys’ fee and the Gottlieb claim, there is a balance of approximately $71,000 in the Burke award. This is the subject of the conflicting claims of the city and the Federal Government which can best be analyzed by a chronological statement of the pertinent events:
February 28, 1958— Title to Burke’s property vested in the city.
September 23, 1958 — The City Comptroller served a notice of determination on Burke. This stated that Burke owed $402,599.66 in excess of the amounts which it had reported in its sales tax returns for the period between September 1,1954, and August 31,1957: And on its business tax return for the period between July 1, 1954 and June 30, 1957.
*147 December 28, 1960— The city filed a warrant in the County Clerk’s office for $58,723.87. This was based on sales taxes which Burke’s return showed to be due for the period from March 1 to November 30, 1960 and for business taxes which Burke’s return showed to be due for the year 1959, none of which had been paid by Burke. The amount presently due and unpaid on that warrant is $49,730.17.
March 13, 1961 — The United States Government filed with the County Clerk liens for Federal taxes due from Burke in the aggregate sum of $32,065.88.
October 19, 1961 — Burke and the city agreed to reduce to $32,974.44, the taxes of $402,599.66 claimed by the Comptroller in his notice of determination of September 23,1958, supra.
October 30, 1961 — The city filed a warrant for the foregoing $32,974.44 in the County Clerk’s office.
The Federal Government’s claim is based upon sections 6321, 6322 and 6323 of the Internal Revenue Code of 1954.
Section 6321 provides that if a person neglect or refuse to pay any tax owing by him, the amount thereof ‘£ shall be a lien in favor of the United States upon all property and rights to property * * * belonging to such person.” Section 6322 provides that the lien shall arise when the assessment is made.
Section 6323 provides that the lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed in the appropriate public office therefor, which in this case is the County Clerk’s office. The city, of course, does not fall within any of the foregoing categories. However, it claims priority, by virtue of its alleged right of setoff, both with regard to the $50,000 still due under the December, 1960 warrant, and with regard to the $33,000 due under the October, 1961 warrant.
The legal principles controlling the adjustment of the competing Federal and State interests in this field have been set forth by Chief Justice Warren in Aquilino v. United States (363 U. S. 509) where he said (pp. 512-514):££ The threshold question in the case, as in all cases where the Federal Government asserts *148 its tax lien, is whether and to what extent the taxpayer had ‘ property ’ or ‘ rights to property ’ to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that ‘ in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute.’ Thus, as we held only two Terms ago, Section 3670 [now Section 6321] ‘ creates no property rights but merely attaches consequences, federally defined, to rights created under state law ***’*** However, once the tax lien has attached to the taxpayer’s state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer’s ‘property’ or ‘rights to property.’ # * * The application of state law in ascertaining the taxpayer’s property rights and of federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles. This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes ” (citations omitted).
The application of this principle requires recognition of the city’s right to priority in respect of the $49,730.17 balance of the excise taxes which Burke conceded to be due in its return prior to December 28,1960, which was nearly three months before the Federal tax lien was filed. As was said by the Second Department in Matter of City of New York [Coblentz] (11 A D 2d 240, 246-249): “ The doctrine that a condemnation award may be the subject of a setoff is an acceptable one. There is ‘ manifest equity’ in it (Matter of Nunez, 226 N. Y. 246, 250). It follows that a setoff against such an award results in a reduction of the award or the right to the award or, to equity action from [§ 6321, supra], a reduction of the debtor-eondemnee’s ‘ property and rights to property ’ to which a lien of the United States could attach.”
That amount plus interest has next right of payment out of Burke’s award.
The United States Supreme Court has also recognized that ‘ ‘ The government has the same right ‘ which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands in extinguishment of the debts due to him.’ ” (United States v. Munsey Trust Co., 332 U. S. 234, 239.)
*149 A contrary principle applies, however, in the case of the $32,974.44 of excise taxes for which the City of New York filed its warrant in October, 1961, seven months after the filing of the Federal tax lien. ‘ ‘ However, a setoff may not be allowed if the claim sought to be employed for the purpose has not become due and payable £ and final in its nature ’ ”. (Matter of City of New York [Coblentz], supra, p. 249.)
In De Camp v. Thomson (159 N. Y. 444), which is relied on in Coblents {supra), plaintiff obtained a judgment against defendants of $1,800 for costs, which was affirmed in the Appellate Division. Defendants appealed to the Court of Appeals, and gave the required undertaking, thereby staying execution until the decision of the latter court.
While the above case was pending undetermined in the Court of Appeals, defendants obtained a judgment for $300 for costs against plaintiff in another action. The court held that defendants could levy execution on their judgment without requiring them to set it off against plaintiff’s $1,800 judgment. The court said, per Martin, J. (p. 448):££ The authorities seem to be quite uniform to the effect that a judgment to be available as a set-off must be a valid, subsisting obligation and final in its nature, and, hence, that judgments cannot be set off against each other, where one of them has been appealed from and the appeal is still pending and undetermined. * * * It seems quite obvious that the plaintiff, at the time of the trial, had no absolute legal right to the set-off sought to be enforced by this action. His judgment was not then, and indeed might never become payable or enforceable. Whether it would or not depended entirely upon the future action of the court to which the appeal had been taken ” (citations omitted).
That doctrine applies here. At the time when the Federal lien attached, on March 13, 1961, the city’s claim against Burke for excise taxes from 1954 to 1957 was not ££ a valid, subsisting obligation” nor was it “final in its nature”. It would not become final until the proceeding outlined in the New York City Administrative Code had been completed (see Coblentz, 11 A D 2d 245-246, supra).
This is emphasized by the fact that the city’s claim of over $400,000 was subsequently determined to be £ £ a valid subsisting obligation and final in its nature ” for only 8% of the amount originally sought. Wlien that determination was made, the Federal lien had already attached. In United States v. Munsey Trust Co. (supra) the amount of damages sustained by the United States for breach of another contract, which the Gov- *150 eminent was allowed to offset against the contractor’s claim in the subject case, was undisputed (see 332 U. S. 237).
There is thus a vital distinction between the $50,000 for 1959-1960 taxes represented by the city’s December, 1960 warrant, and the $33,000 for 1954-1957 taxes represented by its October, 1961 warrant.
In the former case, the item was conceded to be due by Burke at the time when the Federal warrant was filed. On that date, therefore, the debtor condemnee’s property had been reduced by that amount. But such property was not reduced by the amount of the 1954-1957 taxes until the final determination thereof, subsequent to the filing of the Federal tax warrant.
It may be added that adherence to the city’s argument of allowing priority to the latter item would be incompatible with the “ proper balance ” between city and Federal interests which is envisaged by Chief Justice Warren in Aquilino (supra). Upon the initiation of a condemnation proceeding, the city could file notices of determination against all condemnees subject to excise taxes. Even though the amounts stated in such notices bore no relation to reality, on the city’s theory, it could then claim priority over supervening Federal tax liens for whatever fraction of the foregoing amounts was ultimately determined to be due.
The New York City Administrative Code provides an easy and expeditious method for final determination of the amount of excise taxes due (Matter of City of New York [Coblentz], 11 A D 2d 245-246, supra). If that method had been followed here, Burke’s obligation for the 1954^1957 excise taxes could have been made valid, subsisting and final long before the Federal tax lien attached.
Accordingly, the claims against the award should be paid in the following order of priority:
(1) The attorneys’ fee of $22,500.
(2) The Gottlieb claim of $6,225, with interest.
(3) The city’s claim for $49,730.17, with interest.
(4) The Federal Government’s claim for $32,065.88 with interest.
Since this exhausts the amount of the award, there is no need to consider the city’s warrants of May, 1961 for $16,344.42 nor the Federal Government’s lien of June 6, 1961 for $746.90.