**UNITED STATES of America,**
**Plaintiff,**

v.

**Harry SCHROEDER, Amanda Schroeder, Schroeder Packing Company, Metropolitan Life Insurance Company, County of Fremont, Iowa, and County of Mills, Iowa, Defendants.**

Civ. No. 2–422.

United States District Court
S. D. Iowa, W. D.
March 10, 1962.

Roy W. Meadows, former U. S. Atty. and Sp. Asst. U. S. Atty. and Donald A. Wine, U. S. Atty., Des Moines, Iowa, and Homer R. Miller, Dept. of Justice, Washington, D. C., for the plaintiff.

Hans A. Nathan and Bert B. Rand, (Trammell, Rand & Nathan) Washington, D. C., and Leland C. White, Harlan, Iowa, for the defendants Harry Schroeder, Amanda Schroeder and Schroeder Packing Company.

Leland C. White, Harlan, Iowa, for the defendant Metropolitan Life Insurance Company.

Howard B. Wenger, County Attorney, Hamburg, Iowa, for the defendant County of Fremont, Iowa.

Glen M. McGee, County Attorney, Glenwood, Iowa, for the defendant County of Mills, Iowa.

STEPHENSON, Chief Judge.

On January 23, 1959, the Commissioner of Internal Revenue made assessments of federal income taxes against the defendants Harry and Amanda Schroeder for the years 1944–1947 in the amount of $1,133,949.39. After demand and refusal to pay said taxes, notices of tax liens were filed pursuant to Iowa law in Fremont County (Fremont) and Mills County (Mills), Iowa on December 3 and December 12, 1959, respectively.[1] This action was instituted in March, 1961, to foreclose the government's tax liens. A receiver was appointed[2] to enforce the liens of the United States.

This matter is now before the Court upon the Receiver's request for instructions concerning certain 1960 real property taxes payable in 1961 assessed against the real estate of the defendants Schroeders. Aside from this specific request, three closely related questions have arisen. The first concerns a lien for delinquent 1953 personal property taxes of the defendant Fremont against the defendant Harry Schroeder. The second concerns a lien of the Scott Township Drainage District arising from a

[1]. Taxpayers had previously sought redetermination of their tax liability. The Tax Court determined their tax liability in the amount assessed. 28 T.C. 1332, aff'd, 1961, 8 Cir., 291 F.2d 649, cert. denied, 1962, 368 U.S. 985.

[2]. Pursuant to title 26 U.S.C.A. §§ 7402(a) and 7403(d).

levy in 1954 upon certain real estate owned by the defendant Harry Schroeder in Fremont County, Iowa. The Schroeders' real estate is subject to first mortgages of the defendant Metropolitan Life Insurance Company (Metropolitan) in excess of $180,000.00. The third concerns real estate and personal property taxes accruing during the period of the receivership (after March 20, 1961 when the Receiver was appointed).

The Receiver has filed requests for instructions regarding the priority to be established between the competing liens of the defendant Metropolitan and the defendants Fremont and Mills. The three other questions which have arisen since the Receiver's request was filed are,— first, the defendant Fremont's contention that in January, 1953, certain personal property owned by a partnership of which Harry Schroeder was a partner, was assessed in the amount of $1,102.80 and that said tax became due and payable January 1, 1954; that after said date said tax became a lien upon any and all real estate owned by him at that time;[3] and further, that said lien is prior to any and all other liens.

Fremont further contends it has a prior lien for special assessments levied by the Scott Township Drainage District upon the real estate of Harry Schroeder located in said drainage district. The real estate in the drainage district was assessed[4] in 1954 and at that time said tax became a lien upon all premises against which it was assessed.[5] The defendant Schroeder elected[6] to pay his assessment in installments extending over a period of years. Fremont contends that all unpaid installments constitute a prior lien to that of the plaintiff or any other defendant.

The third matter concerns payment of taxes accruing during the period of the receivership.

The plaintiff contends that since the defendants Schroeders are insolvent, it is entitled to the benefit of section 3466 of the Revised Statutes, title 31 U.S.C.A. § 191, commonly known as the Priority Statute, which provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Although the Priority Statute appears to apply "whenever any person indebted to the United States is insolvent," such is not the case. It is applicable only in the four instances specifically named: 1) the decedent's estate; 2) the voluntary assignment; 3) the attachment of the estate of an absconding, concealed, or absent debtor; 4) the commission of an act of bankruptcy. Considering this question in United States v. Oklahoma,

---

3. Iowa Code § 445.29 (1958), I.C.A. provides in part: "All poll taxes and taxes due from any person upon personal property shall * * * be a lien upon any and all real estate owned by such person or to which he may acquire title and situated in the county in which the tax is levied."

4. Iowa Code § 455.57 (1958), I.C.A. provides:
"When the board has finally determined the matter of assessments of benefits and apportionment, it shall levy such assessments as fixed by it upon the lands within such district, and all assessments shall be levied at that time as a tax and shall bear interest at four per cent per annum from that date, payable annually, except as hereinafter provided as to cash payments thereof within a specified time."

5. Iowa Code § 455.58 (1958), I.C.A. provides:
"Such taxes shall be a lien upon *all premises against which they are assessed* as fully as taxes levied for state and county purposes." (emphasis added).

6. Pursuant to Iowa Code § 455.64 (1958), I.C.A.

1923, 261 U.S. 253, 259, 260, 43 S.Ct. 295, 67 L.Ed. 638, the Court stated:

> "The claim of the United States to the asserted priority rests exclusively upon the statute. * * * It establishes priority which is limited to the particular state of things specified. The meaning of the word 'insolvent' used in the act and of the insolvency therein referred to is limited by the language to cases where 'a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment', etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part. [citing cases]"

We are not here involved with either a decedent's estate, a voluntary assignment, or an absent debtor. What constitutes an act of bankruptcy is defined in section 3 of the Bankruptcy Act, title 11 U.S.C.A. § 21. For purposes here relevant, it provides:

> "(a) Acts of bankruptcy by a person shall consist of his having * * (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property."

Is the appointment of the receiver to enforce the plaintiff's liens the type of receivership contemplated as an act of bankruptcy? It appears not. The distinguishing feature was stated by Judge Augustus Hand as follows:

> "That to constitute an act of bankruptcy a receivership must be a gen-

eral one has been the rule laid down in numerous decisions.

> "A receivership in foreclosure does not constitute an act of bankruptcy. [citing cases]." Elfast v. Lamb, 1940, 2 Cir., 111 F.2d 434, 436.

1 Collier, Bankruptcy, section 3.502 (14th ed. 1961) states:

> "It has been held that "receiver" as used in this act of bankruptcy means a general equity receiver of all of the debtor's property for the benefit of all of his creditors. Consequently, a foreclosure with receivership as an incident thereof, or a receivership for the benefit of a limited group of creditors, would not constitute an act of bankruptcy. A contrary view, however, has been expressed. It would seem that a foreclosure with an accompanying receivership, being merely a procedure to enforce a valid lien, should not be included."

▮ The appointment of the Receiver in the case at bar for the purpose of enforcing the tax liens of the United States does not constitute an act of bankruptcy. Although the issue was not raised by counsel, the third act of bankruptcy [7] is not committed by the filing of a tax lien, since the lien is not obtained through "legal proceedings". In re Timberline Lodge, 1955, D.Or., 139 F. Supp. 13; Matter of Rialto Properties, 1934, N.D.Cal., 8 F.Supp. 57. The plaintiff has failed to prove that an act of bankruptcy has been committed and thus the Priority Statute is not applicable. Therefore the contest is between two statutory liens attached to the same real estate. In relation to the lien for the personal property and drainage district taxes, if Fremont's liens are choate, the first in time is the first in right.[8]

---

7. "suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other

disposition of such property;" Section 3, sub. a(3) of the Bankruptcy Act, title 11 U.S.C.A. § 21, sub. a(3).

8. United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

Plaintiff argues that the personal property tax lien is inchoate; that it fails to meet the specificity tests of the New Britain case, to wit: 1) identity of the lienor; 2) amount of the lien; 3) property subject to the lien. In particular, it is contended that the lien upon "any and all real estate owned by such person or to which he may. acquire title" [9] is general in nature and that the property subject to the lien is uncertain.

Plaintiff also contends that the Scott Township Drainage District lien was inchoate when the plaintiff's lien attached. This assertion is based upon the theory that since the 1960 installment payment was not due and payable until March, 1960, it was inchoate when the plaintiff's lien attached in December, 1959. Although plaintiff's contention in this regard was predicated upon the assumption it had the benefit of the Priority Statute, the doctrine of inchoate and general liens is applicable to the case at bar.

To discuss the development and history of the doctrine, even in summary fashion, would unduly extend this opinion. The subject is given excellent treatment by Professor Kennedy in The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale Law Journal 905 (1954). Although born under the Priority Statute, its application has been extended to the Internal Revenue Code. United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53. See Crest Finance Co. v. United States, 1961, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342, reversing 291 F.2d 1, 7 Cir., 1961.

■■ It is beyond dispute that the "effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53. The lien of Fremont County for personal property taxes is undoubtedly too general and therefore inchoate. Since it attaches to "any and all real estate owned by such person or to which he may acquire title and situated in the county" [10] it is not specific enough regarding the property subject to the lien. See e. g., Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348; United States v. Texas, 1941, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356. Plaintiff's contention that said lien is inchoate and therefore not superior to its tax liens is sustained.

■ We are faced with a different question, however, when the special assessment tax lien is considered. It is a lien "upon all premises against which they are assessed." [11] Not only are the identity of the lienor and the amount of the lien specific, but the property subject to the lien is also specific. United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. See Crest Finance Co. v. United States, 1961, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342, reversing 291 F.2d 1, 7 Cir., 1961. Lack of title or possession has not been fatal under the Internal Revenue Code as it has been under the Priority Statute. Compare United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, with United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. The election by the taxpayer to pay this assessment over a period of years had no effect upon the specificity of the lien. Fremont's contention that its lien was choate prior to the attachment of the federal tax liens and therefore superior to them is sustained.

9. Iowa Code § 445.29 (1958), I.C.A. provides in part: "All * * * taxes due from any person upon personal property shall, * * * be a lien upon any and all real estate owned by such person or to which he may acquire title and situated in the county in which the tax is levied."

10. Iowa Code § 445.29 (1958), I.C.A.

11. Iowa Code § 455.58 (1958), I.C.A.

■■ With these two questions resolved, attention must now be given the Receiver's request that the Court establish priority of the liens of Metropolitan and Fremont and Mills. It is agreed that the mortgagee, Metropolitan, prevails over the plaintiff's lien.[12] Except for such statutory exceptions, any excess funds are subject to the federal lien. "There is nothing in the language of § 3672 to show that Congress intended antecedent federal tax liens to rank behind any but the specific catagories of interests set out therein, and the legislative history lends support to this impression."[13] Whether the State receives its taxes prior to mortgagees is a matter of state law.[14] Under Iowa law, liens upon real estate are prior and superior to mortgage and judgment liens. Linn County v. Steele, 1937, 223 Iowa 864, 273 N.W. 920. Therefore, the Receiver should pay the defendants Fremont and Mills the amount of their claims[15] from the amount set aside to the mortgagee.

■ Concerning the question as to payment of taxes accruing during the period of the receivership, it is clear that the same should be paid as a part of the current operating expenses. 28 U.S.C. A. §§ 959(b) and 960.[16] Palmer v. Webster & Atlas Nat. Bank of Boston, 1941, 312 U.S. 156, 61 S.Ct. 542, 85 L.Ed. 642; Borock v. City of New York, 1959, 2 Cir., 268 F.2d 412.

IT IS ORDERED that the liens of the parties shall be given the following priority:

1. The County of Fremont's lien for the Scott Township Drainage District.

2. The Metropolitan Life Insurance Company's mortgage loan plus accrued interest thereon.

3. The lien of the United States.

IT IS FURTHER ORDERED that the Receiver shall, from the amount set aside to Metropolitan Life Insurance Company on its mortgage loan plus accrued interest, pay the remaining real estate tax liens plus interest and penalties of Fremont County and Mills County.

IT IS FURTHER ORDERED that the Receiver shall pay real estate and personal property taxes accruing during the period of the Receivership as a part of current operating expenses.

12. 26 U.S.C.A. § 6323(a) provides:
   "Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate."

13. United States v. City of New Britain, 1954, 347 U.S. 81, 88, 74 S.Ct. 367, 98 L. Ed. 520.

14. Ibid. Exchange Bank & Trust Co. v. Tubbs Mfg. Co., 1957, 5 Cir., 246 F.2d 141, cert. denied City of Dallas, Texas v. Tubbs Mfg. Co., 355 U.S. 868, 78 S.Ct. 118, 2 L.Ed.2d 75.

15. The amount of the delinquent personal property tax shall not be paid Fremont County since all of the mortgages of Metropolitan in Fremont County were recorded before said tax became a lien upon the real estate of the defendant Schroeder. See Bibbins v. Clark, 1894, 90 Iowa 230, 57 N.W. 884, 59 N.W. 290, 29 L.R.A. 278.

16. 28 U.S.C.A. § 959(b) provides:
   "A trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."
   28 U.S.C.A. § 960 provides:
   "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."