UNITED STATES *v.* R. F. BALL CONSTRUCTION CO., INC., ET AL.

No. 97.   Argued January 27, 1958.—Decided March 3, 1958.

*Alexander F. Prescott* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *George F. Lynch.*

*Josh H. Groce* argued the cause for respondents.   With him on the brief was *Jack Hebdon* for the United Pacific Insurance Co., respondent.   *Mr. Groce* also filed a brief for the R. F. Ball Construction Co., Inc., respondent.

PER CURIAM.

The judgment is reversed.   The instrument involved being inchoate and unperfected, the provisions of § 3672 (a), Revenue Act of 1939, 53 Stat. 449, as amended, 53 Stat. 882, 56 Stat. 957, do not apply.   See *United States* v. *Security Trust & Savings Bank,* 340 U. S. 47; *United*

*States* v. *City of New Britain,* 347 U. S. 81, 86–87. The claim of the interpleader for its costs is controlled by *United States* v. *Liverpool & London & Globe Ins. Co.,* 348 U. S. 215.

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE BURTON and MR. JUSTICE HARLAN join, dissenting.

The question presented is whether an "assignment" made by a subcontractor to his performance-bond surety of all sums to become due for performance of the subcontract, as security for any indebtedness or liability thereafter incurred by the subcontractor to the surety, constituted the surety a "mortgagee" of those sums within the meaning of § 3672 (a) of the Internal Revenue Code of 1939, as amended.

Ball Construction Company had contracted to construct a housing project in San Antonio, Texas. On July 17, 1951, it entered into a subcontract with Jacobs under which the latter agreed to do the necessary painting and decorating of the buildings, and to furnish the labor and materials required, for a stipulated price. The terms of the subcontract required Jacobs to furnish to Ball a corporate surety bond, in the amount of $229,029, guaranteeing performance of the subcontract. On July 21, 1951, Jacobs, to induce respondent, United Pacific Insurance Company, to sign the bond as surety, assigned to the surety all sums due or to become due under the subcontract, as collateral security to the surety for any liability it might sustain under its bond through nonperformance of the subcontract, and for "the payment of any other indebtedness or liability of the [subcontractor to the surety] whether [t]heretofore or [t]hereafter incurred," not exceeding the penalty of the bond. On April 30, 1953, a balance of $13,228.55 became due from

Ball under the subcontract, but, because of outstanding claims of materialmen against Jacobs, Ball did not pay the debt. In May, June, and September, 1953, the District Director of Internal Revenue filed, in the proper state office, federal tax liens against Jacobs, aggregating $17,010.85. Between December 1953 and March 1954—thus during the coexistent period of the bond and the assignment—Jacobs incurred indebtedness, independent of the subcontract, to the surety in the amount of $12,971.88.

The surety, contending that its assignment of July 21, 1951, constituted it a "mortgagee" within the meaning of § 3672 (a), claimed priority of right to the $13,228.55 fund over the subsequently filed federal tax liens. The Government disputed the claim and asserted a superior right to the fund under its tax liens. Several creditors of Jacobs, holding unpaid claims for materials furnished for and used in performing the subcontract, asserted priority to a portion of the fund over the claims of both the surety and the Government. Because of these rival claims, Ball instituted this interpleader action, under which he impleaded the surety, the Government, and the materialmen, and paid the fund into the registry of the court to abide the judgment. Before conclusion of the trial the materialmen's claims were satisfied. The District Court held that, by the terms of the "assignment" and on its date of July 21, 1951, the surety became a mortgagee of the fund and that its right thereto was superior, under § 3672 (a), to the subsequently filed federal tax liens. 140 F. Supp. 60. The Court of Appeals, adopting that opinion, affirmed. 239 F. 2d 384.

This Court now reverses summarily, citing *United States* v. *City of New Britain,* 347 U. S. 81, and *United States* v. *Security Trust & Savings Bank,* 340 U. S. 47. We believe those cases are not in point nor in any way controlling. Neither of them even involve either the ques-

tion here presented or the statute here conceded by the parties to be controlling. Rather, they involved entirely different facts, presented very different questions, and were controlled by and decided upon other statutes. They were controlled by and decided upon §§ 3670 and 3671 of the Internal Revenue Code of 1939,[1] which, in pertinent part, provided: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property . . . belonging to such person" (§ 3670) from the time ". . . the assessment list was received by the collector . . . ." (§ 3671.) Whereas the statute governing this case, as the parties concede, is § 3672 (a) of the Internal Revenue Code of 1939, as amended,[2] which, in pertinent part, provided: "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—(1) . . . in the office in which the filing of such notice is authorized by the law of the State . . . in which the property subject to the lien is situated . . . ."

The controversy in *New Britain* was over that portion of the proceeds of a real estate mortgage foreclosure sale which exceeded the amount of the mortgage. The City of New Britain, in virtue of its unpaid annual ad valorem tax liens which attached to the real estate on October 1 in each of the years 1947 through 1951, and its water-rent liens which had accrued from December 1, 1947, to June 1, 1951, claimed priority of right to the fund over general federal tax liens against the mortgagor which had been effected under §§ 3670 and 3671 by deposit of assess-

---

[1] 53 Stat. 448 and 449, 26 U. S. C. (1952 ed.) §§ 3670 and 3671.

[2] 53 Stat. 449, as amended by § 401 of the Revenue Act of 1939, c. 247, 53 Stat. 882, and § 505 of the Revenue Act of 1942, c. 619, 56 Stat. 957, 26 U. S. C. § 3672 (a).

ment lists in the Collector's office on various dates between April 26, 1948, and September 21, 1950. Thus, some of the City's liens had attached to the real estate prior to receipt by the Collector of the assessment lists and some had not.

This Court was not there dealing with any mortgage, pledge or other contractual lien, but was only dealing, as it said, with "statutory liens" (*id.*, at 84); and in deciding the issue of their priority it observed that, although §§ 3670 and 3671 created a lien in favor of the United States upon all property of the taxpayer as of the time the assessment list was received by the Collector, "Congress [had] failed to expressly provide for federal priority . . ." (*id.*, at 85) under those sections, and the Court held ". . . that priority of these statutory liens is [to be] determined by [the] principle of law [that] 'the first in time is the first in right.' " *Ibid.* The Court then vacated the judgment of the state court and remanded the case for determination of the order of priority of the various liens asserted, in accordance with the opinion.

We think it is not only apparent that § 3672 (a) had no application to that case but also that the Court expressly so declared. It noted that the City of New Britain contended that, because applicable state statutes provided that real estate tax and water-rent liens should take precedence over all other liens and encumbrances and § 3672 (a) subordinated federal tax liens to antecedent mortgages, the Court should hold that the City's tax and water-rent liens—having priority over mortgages—were prior in rank to the federal tax liens; but the Court disagreed, saying: "There is nothing in the language of § 3672 [(a)] to show that Congress intended antecedent federal tax liens to rank behind *any but the specific categories of interests set out therein* . . . ." *Id.,* at 88. (Emphasis supplied.) As we have observed,

*supra,* "the specific categories of interests set out" in § 3672 (a) were and are those of "any mortgagee, pledgee, purchaser or judgment creditor."

In the *Security Trust* case a creditor instituted a suit in California against one Styliano on a note and, on October 17, 1946, pursuant to provisions of the California Code of Civil Procedure, procured an attachment of a parcel of real estate owned by Styliano. While the attachment suit was pending the Government, on December 3, 5 and 10, 1946, filed notices of federal tax liens against Styliano in the proper state office. Thereafter, on April 24, 1947, judgment was rendered against Styliano in the attachment suit, thus perfecting the attachment lien on the real estate. Subsequently Styliano sold the real estate, subject to these liens, and the purchaser filed a suit to quiet his title, impleaded the attachment lienor and the Government, and paid the purchase price into the registry of the court to abide the judgment. The California trial court ordered the fund to be applied, first, in payment of the attachment lien, and, second, in payment of the federal tax liens. The California District Court of Appeal affirmed. On certiorari this Court reversed, pointing out that, under the law of California as declared in *Puissegur* v. *Yarbrough,* 29 Cal. 2d 409, 412, 175 P. 2d 830, 831–832, an attaching creditor obtains "only a potential right or a contingent lien" until a judgment perfecting the lien is rendered, and that meanwhile the lien "is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists." *Id.,* at 50. Naturally, in those circumstances, the tax liens which became perfected in December 1946 were superior to the attachment lien which did not become perfected until May 1947. There, as in *New Britain,* this Court was not dealing with any mortgage, pledge or other contractual lien, or with any question of priority of an antecedent mortgage over subsequently filed tax liens.

It thus seems quite clear to us that the *New Britain* and *Security Trust* cases did not involve the question here presented nor deal with the statute here conceded to be controlling and, therefore, they do not in any way support the Court's decision here.

We also think that, under the law and the facts in this record, the "assignment" was in legal effect a "mortgage," and inasmuch as it antedated the filing of the federal tax liens it was superior to them under the expressed terms of § 3672 (a). That section does not define the term "mortgagee" and, hence, we must assume that it was there used in its ordinary and common-law sense. *United States* v. *Gilbert Associates, Inc.,* 345 U. S. 361, 364; *United States* v. *Security Trust & Savings Bank, supra,* at 52 (concurring opinion). Substance, not form or labels, controls the nature and effect of legal instruments. "State law creates legal interests and rights." *Morgan* v. *Commissioner,* 309 U. S. 78, 80. The law of Texas, where the questioned assignment was made and was to be performed, makes such an "assignment" a valid mortgage. *Southern Surety Co.* v. *Bering Mfg. Co.,* 295 S. W. 337, 341; *Williams* v. *Silliman,* 74 Tex. 626, 12 S. W. 534. Although the relation of a state-created right to federal laws for the collection of federal credits is a federal question, the State's classification of state-created rights must be given weight. *United States* v. *Security Trust & Savings Bank, supra,* at 49–50. Here, the State's determination that such assignments are mortgages in legal effect, and its classification of them accordingly, is not met by anything of countervailing weight. The period of the assignment was coextensive with the bond. The bond remained effective throughout the period here involved and, hence, so did the assignment. The fact that the assignment was of property to be afterwards acquired did not affect its validity as a "mortgage," *Conard* v. *Atlantic Ins. Co.,* 1 Pet. 386, 448, nor did uncertainty

in the amount (not exceeding the fixed maximum) of the generally identified obligation, so secured, do so. *Ibid.* Neither does the fact that the instrument was not recorded under the State's fraudulent conveyance statutes—thus to impart constructive notice to subsequent purchasers, mortgagees and the like—make any difference here, for the instrument was valid between the parties to it, and Congress, by § 3672 (a), expressly subordinated federal tax liens to antecedent mortgages. The questioned assignment conveyed to the surety all sums then due and thereafter to become due under, and for performance of, the then existing subcontract—performance of which was guaranteed by the surety's bond—as security for the payment of sufficiently identified but contingent and unliquidated obligations which the subcontractor might incur to the surety during the coextensive period of the bond and the assignment. In these circumstances, I think it is clear that the assignment was in legal effect a mortgage, completely perfected on its date, in all respects choate, and valid between the parties; and inasmuch as it antedated the filing of the federal tax liens it was expressly made superior to those liens by the terms of § 3672 (a).

For these reasons, I dissent and would affirm the decision and judgment of the Court of Appeals.