Fuld, J. (dissenting).
In my view, the lien of the United States for unpaid taxes is superior both to the attorney’s lien of the respondent Coblentz and the judgment lien of the respondent New York University.
Although 1 ‘ a new trend ’ ’ may be portended by Commissioner v. Stern, 357 U. S. 39 (see American Bar Assn., Proceedings of Section of Real Property, Probate & Trust Law, Part II [1958], p. 81), the cases actually decided by the Supreme Court point the conclusion that the Government’s tax lien is superior to the lien of an attorney on a condemnation award where such award was made after a notice of tax lien had been filed against the taxpayer-client. (See United States v. Ball Constr. Co., 355 U. S. 587; United States v. Scovil, 348 U. S. 218; see, also, United States v. Pay-O-Matic Corp., 162 F. Supp. 154, affd. 256 F. 2d 581, cert. denied 358 U. S. 830; Aquilino v. United States, 3 N Y 2d 511, cert. granted Feb. 24, 1959, 27 U. S. Law Week 3231.)
The respondent Coblentz and his client, Tailored Contour, Inc., entered into a retainer agreement whereby the latter authorized the respondent to act for it in the condemnation proceedings and agreed to pay him, and “ do hereby assign ” to him, for his services, 20% of “ the award and interest that may be paid ” for the property to be taken. As is manifest, no provision of the agreement transferred title or possession to any property and, just as clearly, there was no vendor-vendee relationship created between the respondent and his client, as those terms are ordinarily understood. The respondent agreed to represent the client and to perform legal services, the fee to be paid to bim, uncertain in amount, being strictly contingent, payable only if and after an award was made. Indeed, the client was free, despite the retainer agreement, to terminate the attorney-client relationship at any time he chose. (See Matter of Weitling, 266 N. Y. 184.) At best, therefore, the respondent obtained a potential and inchoate interest, for he had the right neither to receive any money nor to proceed against the prop *316 erty involved in the condemnation proceeding unless and until an award was made. (See, e.g., United States v. Acri, 348 U. S. 211; United States v. Scovil, 348 U. S. 218, supra.) And, beyond all this, there was the possibility that some eventuality might prevent him from ever obtaining even a part of the award.
All of these factors negate any inference that the assignment relied upon constituted a purchase or stamped the respondent a purchaser within the meaning of the Internal Revenue Code. (See United States v. Pay-O-Matic Corp., 162 F. Supp. 154, affd. 256 F. 2d 581, cert. denied 358 U. S. 830, supra; United States v. Ball Constr. Co., 355 U. S. 587, supra; United States v. Scovil, 348 U. S. 218, 221, supra; United States v. Hawkins, 228 F. 2d 517, 518-519.) The Pay-O-Matic case, also involving priority between an attorney’s lien on a condemnation award and a federal tax lien, is indistinguishable from the case before us. In reaching its conclusion, that the attorney’s lien was subordinate to the lien of the Government, the court wrote (162 F. Supp. 156):
“Whether attorney Goldstein’s lien by state tests would be held to be choate, it is clear that under federal tests it is as compared to that of the Government inchoate. It was not established for the amount of the lien was contingent on the outcome of a trial in the state condemnation court to fix the amount of the award to be made to Pay-O-Matic for the property condemned. It was but a ‘ caveat of a more perfect lien to come ’ (United States v. Scovil, 348 U. S. 218, 220 * * *) and is therefore subordinate to the federal tax lien; United States v. City of New Britain, 347 U. S. 81, 84”.
It is likewise my opinion that the judgment lien of New York University is subordinate to the tax lien. The Government filed its notice of tax liens on May 23, 1956, both in the office of the City Register, the place designated by section 240 of this state’s Lien Law, and with the City Comptroller. The University obtained its judgment against the taxpayer, Tailored Contour, on the same day, May 23, 1956, but such judgment was neither filed nor docketed, as required, in the office of the Clerk of the County of New York, until June 5. Since the *317 University could not have a lien against the fixtures belonging to the taxpayer until its judgment was docketed (Civ. Prac. Act, §§ 509, 510), it is clear that the Government’s lien for taxes was prior in time. Once the federal tax lien is properly filed, no subsequently recorded lien or claim may prevail against it. (See United States v. Colotta, 350 U. S. 808; United States v. New Britain, 347 U. S. 81, 84.)
The order appealed from should be reversed and the Comptroller directed to pay to the United States, in partial satisfaction of its tax liens, the moneys heretofore awarded to Tailored Contour, Inc.
Chief Judge Conway and Judges Desmond, Froessel, Van Voorhis and Burke concur with Judge Dye; Judge Fuld dissents in a separate opinion.
Order affirmed.