**ARTHUR COMPANY, a Partnership, Plaintiff,**

**v.**

**CHICAGO PAINTS, INC., Northern Minnesota National Bank of Duluth, Northland Paint Company, Inc., Defendants, and United States of America, Intervenor.**

No. 5–58 Civ. 79.

United States District Court
D. Minnesota,
Fifth Division.

July 18, 1959.

Larson, Loevinger, Lindquist & Fraser, by Gerald E. Magnuson, Minneapolis, Minn., for defendant Chicago Paints, Inc.

Nye, Montague, Sullivan & McMillan, by Craig P. Gilbert, Duluth, Minn., for defendant Northern Minn. Nat. Bank of Duluth.

Fallon Kelly, U. S. Atty., William S. Fallon, Asst. U. S. Atty., St. Paul, Minn., for intervenor, the United States.

DONOVAN, District Judge.

This proceeding, commenced in the Northern District of Ohio and venue transferred here, is in the nature of a bill of interpleader [1] to determine which of several claimants is entitled to the sum of $9,071.13 paid by plaintiff into the registry of the Court.

Defendants have answered and each of them claim they are entitled to all or a part of said sum, excepting Northland Paint Company, which alleges the United States has priority. Following joinder of issues and by agreement of the parties the action as to plaintiff was dismissed.

The United States has intervened [2] claiming all of the fund deposited as subject to a lien for taxes past due.

The parties, in the order named in the caption, will hereinafter, for brevity, be referred to as Arthur, Chicago, the Bank, Northland and Intervenor, and as the claimants, when referred to collectively.

The basic facts were stipulated by counsel at a pretrial conference held on May 19, 1959. Brevity will be served by a summary thereof.

It is undisputed that this controversy arises out of the performance of contracts executed in 1956, whereby Northland agreed to paint certain structures in northeastern Minnesota for Arthur, and to sell Arthur a certain quantity of paint therefor. Northland has been paid all sums due in connection therewith except a balance of $9,071.13, which plaintiff Arthur deposited in the registry of this Court after Northland became financially involved. This fund is the bone of contention in the instant case.

Since 1954, the Bank had been financing Northland and taking assignments of accounts receivable from time to time as security for an open line of credit. Notes were executed each time money was borrowed. Under the arrangement Northland had separate accounts at the Bank, a regular and a collateral account. All checks in payment for services performed by Northland were deposited in the collateral account. The regular account contained only sums loaned to Northland by the Bank. At no time were any funds shifted from the collateral account to the regular account.

As general assignments were executed by Northland they were accompanied by lists of work in progress for which customers had not been billed, as well as by accounts receivable. Attached to assignments of October 9, 1956, November 7, 1956, December 31, 1956, and January 31, 1957, were the schedules reflecting the accounts receivable or to become receivable from Arthur. On March 9, 1957, the Bank notified Arthur that it had "an assignment from Northland as security for indebtedness." The Bank's claim herein is predicated upon this assignment.

Intervenor bases its rights upon specific tax liens arising from assessments for withholding and F.I.C.A. taxes made against Northland by the District Director of the Internal Revenue Service. Liens were perfected by the assessments made on March 6, 1957, and April 29, 1957. Each was followed by notice of assessment and demand for payment issued to the taxpayer. Notices of lien were filed. A balance of $3,963.52 is due on the first assessment and the latter amounting to $22,367.77 is unpaid.

Chicago, as a supplier of materials, furnished and delivered to Northland between September 28, 1956, and November 2, 1956, paint and materials used by Northland in the housing project at Bab-

1. 28 U.S.C.A. § 1335; Standard Surety & Casualty Co. v. Baker, 8 Cir., 105 F.2d 578.

2. Rule 24, Federal Rules of Civil Procedure, 28 U.S.C.A.

bitt and Silver Bay, Minnesota, for the agreed price equal to Chicago's claim of $5,786.40. On December 18, 1956, and prior to notice by the Bank to Arthur of its assignment, Arthur issued two checks totalling $5,700.00, earmarking one for "Silver Bay material" and the other for "Babbitt material." Said checks were made payable to Northland and deposited in the collateral account at the Bank, although correspondence from Arthur indicated the sums were intended ultimately to go to the material supplier.

The sole issue for determination in the case at bar is the question of priority as between the three claimants.

The respective priority between the claimants is governed by 26 U.S.C.A. § 6323(a), Internal Revenue Code of 1954:

"Invalidity of lien without notice. —Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate."

Is the claim of Chicago entitled to priority?

■ Chicago bottoms its claim to priority on its contention that it was the supplier of the materials that went into the housing project. There is no serious denial that it furnished the material for the particular painting job performed. It also stresses the undenied fact that Arthur earmarked two checks made payable to Northland by Arthur indicating the jobs for which the paint furnished by Chicago was used. This is an indication that Arthur was advising the Bank of

its wish to get these two payments ultimately, to Chicago. Unfortunately, the Bank was not legally required to pay heed to such writing on the face of the checks.[3] Chicago could have had recourse to the Minnesota law that would protect it in so far as possible through the filing of a materialman's lien,[4] or reducing its claim to judgment against Northland. It did neither.

■ The cases Chicago cites in support of its contention that Northland had no property right in the portion of the fund sought by Chicago are inapplicable. Nothing in the pleading [5] or facts stipulated herein indicates that Arthur was in anyway obligated to Chicago rather than Northland. There is no evidence of a contractual duty imposed upon Arthur that established any prior rights in Chicago. Suffice to say that any equities Chicago has by what it was or did as a supplier are subject to controlling preexisting liens or property rights. The Court rules Chicago is not entitled to priority and that its equities are secondary to the claims of the Intervenor.

Did the Bank's arrangement with Northland and its practice and conduct in connection therewith satisfy the exception in the quoted statute and thereby create a choate and perfected right of property superior to that of the Intervenor?

■ The majority opinion in the case of United States v. Ball Construction Company, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510,[6] opposes the Bank's claim that it was first in time and hence first in right. See United States v. New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 371, 98

---

3. 10 C.J.S. Bills and Notes § 330(a), pp. 829–831.

4. Minnesota Statutes Annotated, §§ 514-01–514.17;
Compare: United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, where a mechanic's lien did not prevail even after recordation and filing of suit prior to tax assessment.

5. Paragraph V of Chicago's Answer to the Complaint of Intervention admits

and alleges that its claim is against "the moneys due and owing from The Arthur Company to Northland Paint Company, Inc."

6. The decision of the Court of Appeals, 5 Cir., 239 F.2d 384, was an appellee's dream, i. e.: "Per Curiam. The facts of this case are well recited and the controlling principles of law are well stated in the opinion of Judge Rice. * * * 140 F.Supp. 60 * * * Affirmed."

L.Ed. 520, for a discussion of the ancient principle of "first in time is the first in right." The Bank's claim is based on instruments which remained unperfected as a basis for priority.[7] Thus it became subordinate to the Intervenor's tax liens. Counsel for the Bank would distinguish the Ball case from the instant case because it is contended that here "the assignment was for a full valid present consideration." Mr. Justice Whittaker, speaking for the minority, makes obvious that all of this was considered in the conference room of the Court. The dissent in 355 U.S. at pages 593–594, 78 S.Ct. at page 445 emphasizes that:

> " * * * under the law and the facts in this record, the 'assignment' was in legal effect a 'mortgage,' and inasmuch as it antedated the filing of the federal tax liens it was superior to them under the expressed terms of § 3672(a). * * * The fact that the assignment was of property to be afterwards acquired did not affect its validity as a 'mortgage,' * * *. The questioned assignment conveyed to the surety all sums then due and thereafter to become due * * * as security for the payment * * *. * * * the assignment was in legal effect a mortgage, * * * perfected on its date, in all respects choate * * * [and it] antedated * * * the the federal tax liens [and hence is] superior to those liens * * *."

In First State Bank of Medford v. United States D.C.Minn., 166 F.Supp. 204, 210, this Court, by Chief Judge Norbye in construing the Ball case, held that "an assignment [does not constitute] a mortgage within the meaning of" the notice filing provision.

The Bank insists that it is entitled to the status of "purchaser" by reason of the loan and assignment. The Supreme Court has said that "a purchaser within the meaning of § 3672 [now 6323(a)] usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." [8]

This Court is convinced that the Bank's security transaction has failed to meet the test laid down by law for preference over a federal tax lien. Failure to meet such requirement must result in denial of priority to the competitor. The dissent in the Ball case makes clear that the majority opinion recognized the danger of continuing the "general and unperfected lien" doctrine because of its effect on legitimate commercial transactions.

The relative priority of claims, such as those of the instant case, where one is for unpaid taxes due the government, is always a federal question and in the case now before the Court, I hold the claims of Chicago and the Bank as unperfected and inferior to the claim of the United States.

All briefs in chief and in reply submitted as agreed by the parties have been studied by the Court. The references cited therein supporting contentions opposed to the conclusion reached by the

---

7. See note: Applicability of the "General and Unperfected Lien" Doctrine to Contractual Liens, 43 Minn.L.R. 755 (1959), for history, analysis and speculation as to the precise holding of the Ball case. The Bank relies upon the conclusion of the author that the Supreme Court has separate tests for contractual and statutory liens and that a contractual lien perfected in the "commercial" sense is entitled to priority. Even though Minnesota Statutes Annotated, § 521.02 provides for validity and perfection without recordation of accounts receivable, the author's suggested rule of "commercial" perfection for contractual liens appears to require either taking possession of the secured property or filing of the security interest. The note indicates dissatisfaction with the standard of perfection urged by the Bank in the instant case.

This Court fails to find any intent evinced in the Supreme Court decisions to classify interests such as the undisclosed lien of the Bank herein as perfected in the federal sense enabling them to subordinate subsequently filed federal tax liens.

8. United States v. Scovil, 348 U.S. 218, 221, 75 S.Ct. 244, 247, 99 L.Ed. 271; R. F. Ball Construction Company v. Jacobs, D.C.W.D.Tex., 140 F.Supp. 60, 63–64.

Court in this Memorandum are readily distinguished from the instant case.

Intervenor may submit findings of fact, conclusions of law, order for judgment and form of judgment.

Exceptions are allowed.