**UNITED STATES of America,**
**Plaintiff,**

v.

**Arthur DAMROW, Mae Damrow, et al.,**
**Defendants.**

**Civ. No. 4589.**

United States District Court
D. Wyoming.

Dec. 19, 1962.

**616**

Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., for plaintiff.

Joseph F. Maier, Torrington, Wyo., for defendant Travelers Indemnity Co.

KERR, District Judge.

This case involves competing claims of the Federal Government and of Travelers Indemnity Company to the sum of $11,238.84, deposited in the registry of this court by the State of Wyoming. The fund represents the 5% of the monthly partial estimates of the value of the work done, which had been retained by the State of Wyoming pending completion and acceptance of the work under the contract between the State of Wyoming and Arthur Damrow for the grading, draining, surface treatment, etc., of 4.-677 miles of the Douglas-Esterbrook road near Douglas, Converse County, Wyoming, known as Wyoming Project No. S–0503(1).

For the sake of brevity, Arthur Damrow and Mae Damrow will be referred to as "taxpayers", the State Highway Commission of Wyoming as "Wyoming", and the Travelers Indemnity Company as "Travelers".

The distribution of this fund depends upon whether the taxpayers had "property" or "rights to property" therein to which the government's lien could attach pursuant to Section 6321 of the Internal Revenue Code of 1954, and whether or not the claim of Travelers was choate and perfected within the purview of Section 6323 of the Code.

The matter has been submitted to the Court on an Agreed Statement of Facts, which may be summarized as follows:

On September 22, 1959, Wyoming and taxpayer Arthur Damrow entered into a written contract for the construction of certain specified highway improvements on Wyoming Project No. S–0503(1). On the same date taxpayer Arthur Damrow furnished a contractor's bond to Wyoming as required by State law and Travelers signed as surety thereon.

Prior to the execution of the agreement, September 22, 1959, and on July 29,

1959, taxpayers executed a written "General Agreement of Indemnity" to Travelers. The indemnity agreement provided in part:

"The Indemnitors hereby *assign*, transfer, and set over to the Company (to be effective as of the date of any such bond, *but only in the event of a default* as aforesaid), all of their rights under the contract, including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, *and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due,* and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof." (Emphasis supplied.)

With the exception of cleaning off a work area which was done at the cost of $110.00, Taxpayer, Arthur Damrow, completed the physical work of construction as required by the contract with Wyoming. He failed, however, to pay claims for labor and materials in the sum of $64,258.94. This amount was paid by Travelers pursuant to the terms of the aforesaid bond dated September 22, 1959. On January 31, 1961, after having paid the laborers' and materialmen's

claims, Travelers wrote a letter to Wyoming demanding that it pay Travelers all the funds in its possession owing to taxpayers.

That Travelers has a claim against taxpayers under their indemnity agreement there can be no doubt. Travelers has, however, no ground to assert a claim against Wyoming under the construction contract between Wyoming and the taxpayers.

There are no outstanding claims under the contract. There is no unfinished work to be performed under the contract. Publication of the statutory notice of acceptance and final settlement was properly made, stating that the *contractor* was entitled to *final settlement* under the contract and that *full amount due him would be paid on July 19, 1961.* By the terms of the construction contract, therefore, the 5% of the partial estimates retained by Wyoming was due and payable to the taxpayer-contractor. Under these circumstances, the retained fund constitutes "property" or "rights to property" belonging to the taxpayers to which the tax lien attached pursuant to 26 U.S.C. § 6321. The unqualified obligation of Wyoming to pay the retained 5% when the contract was completed ran solely to the taxpayer who completed the contract.

The Director of Internal Revenue made assessments of withholding and unemployment taxes, with penalties and interest thereon against the taxpayers. The lien notices were filed in the Office of the County Clerk, Goshen County, Wyoming, where the taxpayers reside. In these respects the parties stipulated to the following facts:

| "Instrument No. | Amount | Assessment Date | Filing Date |
|---|---|---|---|
| 476160 | $ 9,070.98 | 11–25–60 | 2–7–61 |
| | 1,351.17 | 12–9–60 | 2–7–61 |
| 479396 | 21.34 | 1–6–61 | 5–17–61 |
| 480955 | 502.74 | 5–19–61 | 6–29–61 |
| 481326 | 85.00 | 5–19–61 | 7–12–61 |
| | $11,031.23" | | |

On March 9, 1961, and January 11, 1962, Notices of Levy, Forms 668–A, were served on the Wyoming State Highway Department. It was also served with the Final Demand Forms 668–C on January 11, 1962, and on January 23, 1962. These forms show the statutory additions to be $207.61, and the total indebtedness of $11,238.84.

The claim of the Government against taxpayers is based upon their failure to pay the Government the amounts due in satisfaction of Federal Withholding and Unemployment taxes due on wages paid employees during the course of the work under the contract between the taxpayers and Wyoming dated September 22, 1959. A default judgment against taxpayers in favor of the Government in the amount of $11,031.23 has been entered by this Court in this action. The action against the State of Wyoming was dismissed subsequent to its payment into the registry of this court the sum of $11,238.84, being the amount of the final payment due under the contract.

Travelers claims that it is a mortgagee or purchaser within the provisions of Section 6323, which provides that "Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate— (1) In the office designated by the law of the State or Territory in which the property subject to the lien is situated * * *". The terms "mortgagee" and "purchaser" have been the subject of much litigation. In Section 301.6323–1 (a) (ii) of the Federal Tax Regulations those terms have been analyzed as follows:

"The determination whether a person is a mortgagee, pledgee, purchaser, or judgment creditor, entitled to the protection of Section 6323(a), shall be made by reference to the realities and the facts in a given case rather than to the technical form or terminology used to designate such person. Thus, a person who is in fact and in law a mortgagee, pledgee, or purchaser will be entitled as such to the protection of section 6323(a) even though such person is otherwise designated under the law of a State, such as the Uniform Commercial Code."

The transaction giving rise to this suit involves none of the indicia of a vendor-vendee relationship. The assignment from taxpayers to Travelers was a security arrangement. It was conditional and contingent upon default of taxpayers under their contract with Wyoming. No interest in the construction contract was conferred upon Travelers by the assignment. Travelers was merely a lienor, not a purchaser. United States v. L. C. Chapman, et al., 281 F.2d 862 (10 Cir., 1960).

The substance of the assignment did not create the status of mortgagee for Travelers. The assignment was executed solely for the purpose of inducing Travelers to sign the bond. At the time the tax liens were filed the assignment amounted to an unperfected inchoate lien. As such it was subordinate to the government's tax lien, and Section 6323 does not apply. United States v. R. F. Ball Construction Co., Inc., et al., 355 U.S. 587; 78 S.Ct. 442, 2 L.Ed.2d 510 (1958).

The express purpose of the assignment was to indemnify the surety against expenses it might incur in the event the taxpayers defaulted under the contract. It did not relieve the taxpayer of any liability in that eventuality, however, for it provided that in the event the taxpayers defaulted Travelers would take over the contract and make the necessary payments "at the expense of the indemnitor".

Under the authority of the Ball case, supra, I have no alternative but to conclude that the assignment was inchoate and unperfected and that the assignee surety was not a mortgagee under the Internal Revenue Act, and therefore the government's tax liens have priority over the surety's claim against the retained fund.

Based on the foregoing analyses and conclusions, I find that the taxpayers had "property" or "rights to property" in the fund withheld by Wyoming; that the assignment by the taxpayers to Travelers was not a choate nor a perfected lien; and that Travelers does not qualify as one of the protected entities under Section 6323.

This opinion sufficiently states the Findings of Fact and Conclusions of Law of the Court. Further Findings of Fact and Conclusions of Law are not necessary. Appropriate judgment will be entered directing the sum of $11,238.-84 be paid to the Director of Internal Revenue thirty-one (31) days from and after the entry of this judgment unless an appeal is taken. In that event the clerk will retain said sum in the registry of the court until the Mandate is received from the Appellate Court directing disposition of said sum.