**PERRIN & MARTIN, INC.**
v.
**UNITED STATES of America**
and
**M. M. Clark, Inc.**
Civ. A. No. 2380.

United States District Court
E. D. Virginia,
Alexandria Division.
July 28, 1964.

Oren R. Lewis, Jr. (Tolbert, Lewis & FitzGerald, Arlington, Va.), for plaintiff.

C. Vernon Spratley, Jr., U. S. Atty., Richmond, Va., for the United States.

L. Farnum Johnson, Falls Church, Va., Theodore Prahinski, Washington, D. C., for M. M. Clark, Inc.

BUTZNER, District Judge.

This case has been submitted for decision on stipulation of facts. It involves the priority of the Government's claim for taxes owed by the Southern Asbestos Company, Incorporated, and the claim of M. M. Clark, Inc. for materials furnished Southern Asbestos Company, Inc.

Perrin & Martin, Inc. was the subcontractor for the heating, ventilating and air conditioning system of the Potomac Towers Apartments in Arlington, Virginia. On June 5, 1959 Asbestos, the taxpayer, submitted a bid for insulation, which was accepted by Perrin & Martin.

The taxpayer, Asbestos, was indebted to the United States for withholding taxes for the first quarter of 1959 in the amount of $2,343.91. This amount was assessed on May 29, 1959. A tax lien for this assessment was filed in the Clerk's Office of the United States District Court for the District of Columbia on December 3, 1959.

Asbestos was also indebted for withholding taxes for the second quarter of 1959 in the amount of $3,902.62. This amount was assessed on August 28, 1959. A tax lien for this assessment was filed in the Clerk's Office of the United States District Court for the District of Columbia on October 28, 1959.

Other taxes were assessed, which are not material to this case.

Asbestos was incorporated in the District of Columbia.

Insulating materials in the amount of $8,799.86 were furnished by Clark to Asbestos at various dates starting November 18, 1959 and ending June 10, 1960. Asbestos installed these materials in the Potomac Towers at various dates between November 24, 1959 and June 27, 1960. The tax lien which was filed December 3, 1959 was issued on November 23, 1959. At that time Clark had furnished $1,089.06 of the materials.

Perrin & Martin paid Asbestos for approximately 90% of the work performed the sum of $20,250. at various dates between December 14, 1959 and June 24, 1960.

Perrin & Martin retained $2,750. It deducted back charges totaling $218.01, leaving a balance of $2,531.99, which it deposited in the registry of this Court under the bill of interpleader in this case.

On July 29, 1960 Asbestos wrote the following letter to Perrin & Martin:

"Gentlemen:

I hereby assign my retainers of ten (10) per cent to M. M. Clark, 1101 V., Street S.E., Washington 20, D.C., on the Potomac Towers apartment building, Arlington, Virginia.

> Very truly yours,
> William L. Strieter
> Southern Asbestos Co., Inc."

On September 6, 1960 the Government served on Perrin & Martin a notice of levy aggregating $9,659.99. Subsequent notices of levies were made on December 15, 1960, March 9, 1961 and April 13, 1961.

On September 12, 1960 Asbestos wrote to Perrin & Martin:

"Gentlemen:

"By virtue hereof, we do revoke, renounce, and cancel the unilateral arrangement made for the convenience of M. M. Clark, Inc., our supplier, by letter to you written in midsummer, 1960; whereby we requested you to pay all money due this company from you on sub-contract for insulation at the above identified job-site, and

"By these premises and for good and valuable consideration we do convey, bargain, and sell, transfer and assign unto the Internal Revenue Service, U. S. Treasury Department, all of this company's right, title and interest in and to the proceeds of subcontract with Perrin and Martin for the insulation at the job-site known as Potomac Towers Apartments, Arlington, Virginia. This said assignment of contract proceeds includes all money owed the Southern Asbestos Co., Inc., by Perrin and Martin on the aforesaid job-site in the approximate amount of $2,750.00.

"By these premises we direct Perrin and Martin to pay said sums to the Director, Internal Revenue Service forthwith."

Clark never perfected a mechanic's lien.

Pertinent sections of the Internal Revenue Code of 1954 are:

26 U.S.C. § 6321:

"Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

26 U.S.C. § 6322:

"Period of lien

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or be-

comes unenforceable by reason of lapse of time."

26 U.S.C. § 6323

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—"

"(3) With clerk of district court for District of Columbia.—In the office of the clerk of the United States District Court for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

Mr. Chief Justice Warren stated in Aquilino v. United States, 363 U.S. 509, 512, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960):

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, * * *."

In Coleman v. Pearman, 159 Va. 72, 165 S.E. 371, 372 (1932), the Court outlined the methods open to materialmen for obtaining additional security for their claims out of the funds due or to become due under a building contract. They are, (1) by taking the steps prescribed in §§ 43–11 and 43–12 of the Code of Virginia, 1950, to fasten personal liability upon the owner; (2) by filing separate and independent liens under § 43–9 of the Code; and (3) by taking advantage of a lien perfected by the general contractor.

Clark has not availed itself of any of these methods.

Section 43–11, Code of Virginia, 1950, provides that the owner or general contractor may become personally liable to a materialman by notice of the correct amount due the materialman, verified by affidavit.

Section 43–12, Code of Virginia, 1950, provides, however, that the provisions of 43–11 " * * * are subject to the following qualification, that before any such personal liability of the owner or general contractor as is therein provided for shall be binding, the notice therein required, with such return thereon as is sufficient under § 8–52, shall be recorded * * *" in the appropriate record books.

Clark did not give notice verified by affidavit as required by § 43–11, nor did Clark record any notice as required by § 43–12.

For this reason Perrin & Martin were not personally liable to Clark. It is this factual distinction which causes the case to differ from United States v. Durham Lumber Company, 257 F.2d 570 (4th Cir. 1958, affd. 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 1960).

Section 43–19, Code of Virginia, 1950, provides that every assignment by a contractor and every writ of fieri facias, attachment or other process against the contractor to subject or encumber his interest under the contract shall be subject to mechanics' liens. This statute protects inchoate liens. DeWitt v. Coffey, 150 Va. 365, 143 S.E. 710 (1928).

In United States v. Pioneer American Insurance Co., 374 U.S. 84, 88, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), the Supreme Court pointed out:

"As for a lien created by state law, its priority depends 'on the time it attached to the property in question and became choate.' * * *. Choate state-created liens take priority over later federal tax liens, * * * while inchoate liens do not. See United States v. Liverpool & London Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Scovil, 348 U.S. 215, 75 S. Ct. 244, 99 L.Ed. 271; United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725. * * *"

Clark, moreover, never perfected its inchoate mechanic's lien. Its failure in this regard causes the lien to be no longer in existence. Furst-Kerber Cut

Stone Co. v. Wells, 116 Va. 95, 81 S.E. 22, 24 (1914). In this case the Court pointed out that a materialman who had not perfected his lien was simply a general creditor of the subcontractor who had ordered the materials and that he was entitled to no priority in the fund due the subcontractor from the general contractor.

The Court is of the opinion that Overstreet v. Commonwealth, 193 Va. 104, 67 S.E.2d 875 (1951), upon which Clark relies to establish the existence of a trust, does not require that Clark be accorded priority. That case concerns § 43–13, Code of Virginia, 1950, which makes it a misdemeanor for a subcontractor who, with intent to defraud, retains or uses the funds paid to him by the contractor for any purpose other than to pay persons performing labor or furnishing material. It further provides that the use of the money before paying all amounts due shall be prima facie evidence of intent to defraud. The Supreme Court of Appeals of Virginia at 67 S.E.2d 879 recognied that:

"There is a moral obligation closely akin to a legal trust relation extending to both the owner and to those whose material or labor has entered into a structure, that the compensation paid therefor by the owner should not be misapplied. * * * "

While the Supreme Court of Appeals of Virginia had statutes from other states before it which held that a trust relation existed, it is significant that it failed to declare that under the laws of Virginia a trust was created. Moreover, the Supreme Court of Appeals pointed out at 67 S.E.2d 879 "* * * that in Virginia it is the intent to defraud and not the indebtedness which is made the determining feature in establishing guilt."

This Court is of the opinion that Overstreet does not by the application of a criminal statute change the Supreme Court of Appeal's interpretation of civil statutes governing the relationship of subcontractors and materialmen. Overstreet does not modify the principles expressed in Furst-Kerber Cut Stone Co. v. Wells, 116 Va. 95, 81 S.E. 22 (1914).

■■ The assignment to Clark of the fund due Asbestos from Perrin & Martin affords Clark no priority. The Government's liens, which were recorded in the Clerk's Office of the Unied States District Court for the District of Columbia on October 28, 1959 and December 3, 1959, were prior in time to the letter of July 29, 1960, which purported to assign the monies due Asbestos to Clark. Under the principle "the first in time is the first in right", the Government is entitled to priority over the assignment. See United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954) ; United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958).

■ The Government's liens were effectively filed in the District of Columbia. Asbestos was domiciled there. Asbestos' claim against Perrin & Martin was personal property—a chose in action. It is well established that the situs of personal property is the same as the owner's domicile. Cf. Grand Prairie State Bank v. United States, 206 F.2d 217 (5th Cir. 1953).

■ The attorney representing Perrin & Martin is not entitled to a fee from the interpleaded fund. The Federal tax lien had previously attached to the fund. United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963) ; United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958) ; United States v. Liverpool & London Insurance Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955).

Judgment will be entered for the United States.

Counsel for the Government are requested to draft an appropriate order and present it to the Court after it has been circulated among counsel for the other parties.