**UNITED STATES of America,
Plaintiff,**

v.

**Robert J. WELSH, Springfield Freight
Lines, Inc., Arthur M. Marshall, Hennis
Freight Lines, Inc., Joseph R. Savoy,
and Leonard S. Michelman, Defendants.**

**Civ. A. No. 66-797.**

United States District Court
D. Massachusetts.

Oct. 15, 1969.

Herbert F. Travers, Jr., U. S. Atty.,
Joseph A. Lena, Asst. U. S. Atty., for
plaintiff.

David M. Marshall, Springfield, Mass.,
for Arthur M. Marshall and Hennis
Freight Lines, Inc.

Leonard S. Michelman, Springfield,
Mass., for Joseph R. Savoy.

Fernand R. Ducharme, Holyoke, Mass.,
for Springfield Freight Lines, Inc.

David Burres, Springfield, Mass., for
Robert J. Welsh.

Leonard S. Michelman, Springfield,
Mass., pro se.

## OPINION

JULIAN, District Judge.

This is a civil action in which the
United States, plaintiff, seeks to reduce

to judgment certain federal tax liabilities assessed against the defendant Robert J. Welsh, and to foreclose federal tax liens against certain brokerage commissions owed to the defendant Welsh by the defendant Springfield Freight Lines, Inc. ("Springfield") and the defendant Hennis Freight Lines, Inc. ("Hennis").

The action is brought pursuant to Sections 7401 and 7403 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7401 and 7403.

This Court has jurisdiction under the provisions of 28 U.S.C. § 1340 and 26 U.S.C. § 7402(a).

The defendant Joseph R. Savoy lays claim to the same commissions by virtue of two assignments made to him by the defendant Welsh.

The defendant Hennis and its attorney, the defendant Arthur M. Marshall, assert a lien for costs and counsel fees in a fund of $6,000 now in the possession of Marshall constituting the commission owed by Hennis to Welsh.

The defendant Leonard S. Michelman, formerly counsel for Savoy, claims attorney's liens in the fund of $6,000 held by Marshall, and in the fund of $7,000, now in the hands of Savoy, which constitutes the commission owed by Springfield to Welsh.

The case was tried to the Court sitting without a jury.

On the basis of the evidence and of the stipulation of facts (Exh. 1) filed by the parties, I find the following facts:

On November 3, 1958, pursuant to Section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672,[1] a delegate of the Secretary of the Treasury made assessments in the total sum of $14,366.53 [2] against the defendant Welsh as the responsible officer of Thru-Way Express, Inc., for willfully failing to collect, truthfully account for, and pay over to the plaintiff certain withholding and transportation excise taxes owed by Thru-Way Express, Inc., to the plaintiff. On the same date notice of the assessments was given to Welsh and demand made upon him for payment. The sum of $416.70 has been paid or credited on the assessments, leaving an unpaid balance of $13,949.83.

On June 2, 1960, notices of federal tax liens covering the assessments were filed with the Town Clerk of Longmeadow, Massachusetts—where Welsh has resided at all times pertinent to the issues in this case—and with the Registry of Deeds, Hampden County, the county in which Longmeadow is situated.

During 1963 and 1964 the defendant Welsh engaged in the business of finding sellers and buyers of trucking companies that held ICC certificates of public convenience and necessity. While so engaged he earned broker's commissions in two unrelated transactions involving, respectively, the defendant Springfield Freight Lines, Inc., and the defendant Hennis Freight Lines, Inc. The commissions did not become due until the ICC approved the transfer of the certificates.

On April 15, 1963, Welsh assigned to the defendant Savoy his right to the broker's commission from Springfield. This commission, however, did not come into existence until some unspecified time after April 15, 1963.

On July 12, 1964, Welsh assigned to Savoy " * * * all my accounts receivable that are now due or that will become due including all contractual commissions."

The commission that Welsh earned from Hennis did not come into existence until after July 13, 1964.

---

1. "Any person required to collect, truthfully account for, and pay over any tax imposed by this title, who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * *"

2. No evidence was introduced to prove that the amount of the assessments is not correct.

Savoy retained defendant Michelman as his attorney to collect the commissions from Springfield and Hennis. Savoy agreed to pay Michelman one-third of the amounts collected plus expenses. As will hereafter appear in greater detail, Michelman thereupon brought suit to collect the commissions.

The parties have stipulated that Michelman is entitled to an attorney's lien pursuant to General Laws of Massachusetts, chapter 221, section 50, for one-third of the gross amount of the recovery in each case. The parties have further stipulated that Michelman's lien "is prior in right to any money received by the United States Government on account of its lien for federal taxes." [3]

The plaintiff caused a notice of levy to be served upon Hennis on March 11, 1965, and upon the defendant Marshall, the attorney for Hennis, on March 26, 1965. On April 8, 1965, the plaintiff served a final demand upon Marshall.

On June 5, 1963, and January 27, 1965, the plaintiff served a notice of levy, and on February 3, 1965, a final demand upon Springfield.

On February 5, 1964, Welsh signed six documents entitled "Tax Collection Waiver,"—Exhibits 2, 3, 4, 5, 6, and 7—relating to the assessments mentioned above. These documents were also executed on the same date by a duly authorized Revenue Agent in behalf of the District Director of Internal Revenue.

Each said waiver contained the following agreement:

"It is hereby agreed by and between the above-named taxpayer, party of the first part, and the District Director of Internal Revenue, party of the second part, that the unpaid balance of the assessment identified below may be collected (together with such interest, penalties, or other additions as provided for by law which have accrued and which may accrue on the assessment) from said party of the first part by levy or by a proceeding in court begun on or before the date which is shown at the right hereof."

Each waiver also contained the statement "Statute Extended to December 31, 1966" at the right of the agreement quoted above.

The assessments are identified in the waivers as follows:

| | CLASS OF TAX AND PERIOD | ASSESS-MENT DATE | ACCOUNT NUMBER | UNPAID BALANCE OF ASSESS-MENT |
|---|---|---|---|---|
| Exhibit 2 | Withheld 6–30–57 | 11–3–58 | 7–59 297506 | $1,085.96 |
| Exhibit 3 | Withheld 9–30–57 | 11–3–58 | 7–59 297504 | 2,005.46 |
| Exhibit 4 | Withheld 12–31–57 | 11–3–58 | 7–59 297505 | 4,208.50 |
| Exhibit 5 | Withheld 3–31–58 | 11–3–58 | 7–59 297503 | 3,506.19 |
| Exhibit 6 | Excise 9–30–57 | 11–3–58 | 7–59 820000 | 2,193.09 |
| Exhibit 7 | Excise 3–31–58 | 11–3–58 | 7–59 820001 | 1,367.33 |

The unpaid balances of the assessments listed above totaled $14,366.53.

I find that the defendant Welsh understandingly and voluntarily signed each of the six waivers.

Welsh claims that he signed the waivers extending the statute of limitations only because Revenue Agent Wisnoski represented that the plaintiff would accept the sum of $3,500 in full settlement

3. In view of this stipulation the Court does not decide the question whether, on the facts found, Michelman's attorney's lien is entitled as a matter of federal law to priority over the Government's tax lien. The Court accepts the stipulation as the law of this case.

of what he owed. I find on the basis of the credible evidence that no representation was ever made to Welsh or any other person by Agent Wisnoski or any other agent or employee of the plaintiff that if Welsh signed the waivers extending the statute of limitations the plaintiff would accept in full settlement the sum of $3,500 or any other sum less than the full amount claimed by the plaintiff. I find that Agent Wisnoski, who over a period of several years had repeatedly tried without success to obtain payment from Welsh, explicitly informed him that if he did not sign the waivers the plaintiff would proceed to file suit against him and obtain a judgment.

Savoy, as assignee of Welsh, brought an action in the Hampden County Superior Court against Springfield (case number 110439) and against Hennis (case number 111750) to recover the commissions earned by Welsh. In the latter case Marshall appeared as counsel for Hennis.

Case number 110439, the case against Springfield, terminated with a settlement whereby Springfield paid to Savoy the sum of $7,000. Savoy delivered to Springfield a surety company bond to indemnify Springfield for any payments it might be required to make as a result of being "liened" by the Internal Revenue Service because of Welsh's indebtedness to the plaintiff. Savoy has paid attorney Michelman his out-of-pocket expenses and $1,000 as part of his fee for his services in the case against Springfield. Savoy still owes Michelman a balance of $1,333 for these services.

Case number 111750 against Hennis has been settled for $6,000. Welsh and Savoy, however, have not yet executed and delivered to Hennis or to Marshall, its attorney, the releases required to obtain the $6,000, and no final judgment in the case has been entered by the Superior Court.

Defendants Marshall and Hennis admit in their answer to plaintiff's complaint that defendant Marshall is holding $6,000—the amount of the settlement— for the defendant Welsh and his assignee, the defendant Savoy.

Savoy advanced sums of money to Welsh evidenced by the following:

Note dated March 4, 1963, in the amount of $100

Note dated March 8, 1963, in the amount of $1,375

Note dated April 16, 1963, in the amount of $2,400

Note dated April 22, 1963, in the amount of $2,500

Note to Third National Bank of Hampden County, $2,500

Note to Third National Bank of Hampden County, $3,500

The total amount of money due Savoy from Welsh is $12,375. The dates of the two notes to the Third National Bank are not disclosed by the stipulation or by the evidence.

On July 13, 1964, Savoy filed in the Town of Longmeadow and in the Secretary of State's office in Boston a financial statement "covering the assignment" made by Welsh to Savoy on July 12, 1964. The contents of the financial statement are not otherwise disclosed by the evidence.

Welsh signed the six "Tax Collection Waivers" mentioned above without obtaining the approval of Savoy or Michelman.

Neither Savoy nor Michelman ever signed a "Tax Collection Waiver" or ever approved the extending of the statute of limitations.

Savoy and Michelman have applied to the Internal Revenue Service for the discharge of the liens filed by the Government. The applications have been denied.

Savoy has paid attorney Michelman nothing in connection with case numbered 111750, the case against Hennis. When the settlement was agreed upon Savoy agreed to pay attorney Michelman $2,000 for his services plus $200 to reimburse him for his expenses, or a total of $2,200.

■ Throughout 1957 and 1958 Welsh was president and general manager of Thru-Way Express, Inc. He owned all its outstanding stock. He was in full charge of its operations and financial affairs. He bought equipment, solicited business, hired and fired employees, issued the corporation's checks in payment of wages and suppliers. He ran the corporation. He did not take orders from anyone. During 1957 and 1958 he was the active executive head of the corporation.

I find (1) that Welsh during 1957 and 1958 was the person in Thru-Way Express, Inc., required to collect, truthfully account for, and pay over the taxes imposed by the Internal Revenue Code, (Title 26 U.S.C.); (2) that the withholding and excise taxes listed in Exhibits 2, 3, 4, 5, 6, and 7 were taxes imposed by the Internal Revenue Code and owed by Thru-Way Express, Inc., to the plaintiff; (3) that Welsh was fully aware that Thru-Way Express, Inc., owed those taxes and that they were not being paid; and (4) that Welsh knowingly, voluntarily, and intentionally failed to collect them, to account for them, and to pay them over to the Government. I further find that such failure on his part was willful.

## CONCLUSIONS OF LAW

The assessments made under 26 U.S.C. § 6672 against the defendant Welsh as the responsible officer of Thru-Way Express, Inc., were validly made. Flan v. United States, 1964, 7 Cir., 326 F.2d 356; Horwitz v. United States, 1965, 2 Cir., 339 F.2d 877; Datlof v. United States, 1966, E.D.Pa., 252 F.Supp. 11, 33, af-

firmed in 370 F.2d 655, 3 Cir., cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L. Ed.2d 624.

■ The waivers executed by the defendant Welsh were, and are, valid, and effectively extended the statute of limitations to December 31, 1966, with respect to each assessment.

The defendant Welsh is liable to the plaintiff for the total sum of the assessments[4] made against him, namely, $14,-366.53, less credits in the amount of $416.70.

■ The claim of the plaintiff to the two commissions earned by the defendant Welsh is superior to the claim of the defendant Savoy. The assessments and the demand for their payment were made on Welsh and the notices of the federal tax liens were filed in accordance with law, long before Welsh made the assignments to Savoy. Under the applicable statutes[5] it is clear that the plaintiff's liens have priority over the assignments to Savoy. United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Security Trust and Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; Glass City Bank of Jeanette, Pa. v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56; United States v. Graham, 1951, S.D.Cal., 96 F.Supp. 318, affirmed per curiam sub nom. State of California v. United States, 1952, 9 Cir., 195 F.2d 530.

Pursuant to the stipulation of the parties, defendant Michelman's attorney's lien in the amount of $2,200 in the Hennis case settlement of $6,000, and his

4. As to the correctness of the assessments, see United States v. Lease, 1965, 2 Cir., 346 F.2d 696.

5. 26 U.S.C. § 6321: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all prop-

erty and rights to property, whether real or personal, belonging to such person."
    26 U.S.C. § 6322: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

attorney's lien in the amount of $2,333 in the Springfield case settlement of $7,000, are declared to have priority over the plaintiff's lien.[6]

Neither the defendant Hennis nor the defendant Marshall has a lien in the Hennis case settlement of $6,000 now in the hands of Marshall, either for costs, expenses or counsel fees incurred in connection with the case presently before me. Neither of them is entitled to such costs, expenses or counsel fees. United States v. Pioneer American Insurance Co., 1963, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770; United States v. Ball Construction Co., 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510; United States v. Liverpool & London & Globe Insurance Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268.

Accordingly, it is ordered that the following judgments be entered:

(1) Judgment for the plaintiff against the defendant Welsh in the amount of $13,949.83 plus interest from November 3, 1958, the date on which demand for payment was made upon the defendant Welsh;

(2) A judgment declaring that plaintiff's liens upon the claims of the defendant Welsh against the defendants Hennis and Springfield for commissions earned by the defendant Welsh, and upon the funds resulting from the settlement of said claims, are valid and have priority over any rights that the defendant Savoy may have in the same by virtue of the assignments made to him by the defendant Welsh;

(3) Judgment for the plaintiff against the defendants Hennis and Marshall in the amount of $3,800, and ordering them to pay said amount to the plaintiff forthwith;

(4) Judgment for the plaintiff against the defendants Springfield and Savoy in the amount of $4,667, and ordering them to pay said amount to the plaintiff forthwith;

(5) Judgment for the defendant Michelman against the defendants Savoy and Springfield for $1,333 [7] which is the balance of the fee secured by his attorney's lien upon the Springfield case settlement, and ordering them to pay said amount to the defendant Michelman forthwith;

(6) Judgment for the defendant Michelman against the defendants Hennis and Marshall for $2,200 which is the fee secured by his attorney's lien upon the Hennis case settlement;

(7) A judgment declaring that neither the defendant Hennis nor the defendant Marshall is entitled to any part of the Hennis case settlement of $6,000.

The payments received by the plaintiff on the judgments entered herein in its favor shall be applied toward the payment of its judgment against the defendant Welsh.

---

6. The Government reaffirms its position to this effect in its "Memorandum of Law" filed June 5, 1969, at pp. 3 and 4.

7. The parties have stipulated that Savoy has already paid Michelman $1,000 on account of his fee. The total fee was $2,333.